[No. 10,613.—Department Two.]

## PEOPLE v. J. P. FEILEN.

BIGAMY—PRESUMPTION—EVIDENCE—CRIMINAL LAW.—In a trial for bigamy, the Court instructed the jury in substance, that in the determination of the issue as to the continued life of the first wife, they might call to their aid the presumption of law in reference to continuance of a fact once shown to exist. *Held*, to be erroneous.

ID.—NEW TRIAL—INSUFFICIENCY OF EVIDENCE.—In a trial for bigamy, the only evidence to show the life of the first wife, was testimony showing that she was alive about three years prior to the second marriage. *Held*, to be insufficient to sustain a verdict of guilty.

INFORMATION—DEMURRER—CRIMINAL PRACTICE.—The objection that an information does not comply with sections 950, 951, and 952 of the Penal Code, should be raised by special demurrer; it can not be done by general demurrer, or by motion in arrest of judgment.

APPEAL from a judgment of conviction in the Superior Court of Santa Clara County. BELDEN, J.

W. A. Johnston, for Appellant.

A. L. Hart, Attorney-General, for Respondent.

THORNTON, J.:

The defendant was convicted of bigamy, moved for a new trial, which was denied, and judgment was rendered and entered upon the conviction. This appeal is prosecuted from the order denying a new trial, and from the judgment.

On the trial, testimony of a witness was offered and stated that defendant had admitted to him in 1875 or in 1876 that he had left a wife with four or five children in Chicago; that she was sick and couldn't stand a voyage to California. Another witness testified that a person stated to him in 1875, in a conversation had in the presence of defendant, that he (defendant) had a wife and five children in Chicago, and that his wife was sick; that the defendant said nothing in relation to this statement made in his presence; that defendant told him several times that he had a family in Chicago; that ";the last time defendant referred to his family in Chicago was—can't say exactly—about two or three years ago. Said his wife was sickly." A third witness testified that he saw defendant in his office in 1875. This witness proceeded to state: " He (referring to defendant's statements) said times were poor in Chicago; he had a wife and four or five children. He spoke of his family after that—showed me likenesses of children. He spoke of his family the last time about 1878. I couldn't place the date very well." This witness also stated that he introduced defendant to one Habisch; that " defendant explained to Habisch that he had a wife and family in Chicago, and wanted to raise money and bring them to California. This was in 1875." The officer who arrested the defendant was called and testified that defendant told him after the arrest that he had a wife and four chil-

dren, but had not heard of them for four or five years; that he was not certain, but think he said in Chicago. Of this last statement as to the place he was not positive; that there was no threat or inducement offered him to make this statement. The above is all the testimony bearing on the issue as to the wife of the alleged first marriage being alive when the second marriage occurred.

As to the second marriage, it was admitted at the trial that it took place in San José, in this State, in the month of July, 1880, with Dora Max, the person named in the information, and that defendant and Dora Max had lived together as husband and wife since the date just above given in San José.

In a trial on an indictment or information for bigamy, to make out a case on the part of the prosecution the *first* and *second* marriages must be proved, and it must also be proved that the former husband or wife *was alive* when the second marriage was entered into. In this case, it was necessary to prove that the former wife was living in July, 1880, when it is admitted a marriage was celebrated between Dora Max and the defendant.

The Court instructed the jury in accordance with the law as above laid down. On the issue of the first wife being alive it directed the jury in these words: " It is claimed upon the part of the defendant in this case that there is no proof before the jury that this former wife, if wife she were, or if such relation did exist, was in fact living at the time the second marriage was contracted. It is for the jury to determine of that fact, as they do of the other, whether a marriage did in fact exist. The law presumes when a fact is shown once to exist, its continuance under certain circumstances and for certain lengths of time; with reference to some matters it is made conclusive, and in cases of this character the absence of one of the parties to a marriage, unheard from for a period of five years, is a sufficient justification of the party entering into a new marriage relation, and will avoid the consequences of a criminal prosecution for bigamy. This knowledge and this absence must continue for this five years before the statute will protect him. Independent, however, of this particular and specific defense that the statute gives, it is for the jury to determine from all the circumstances of the case,

whether this woman alleged to be the wife of the defendant
was in fact living at the time that he contracted the alleged
second marriage.  That is a matter which you have to deter-
mine from those presumptions of law and of fact which
characterize persons in that condition and situation, which
you find these parties to have maintained.  It is a question
of fact dependent upon the probabilities and presumptions
that may be before you as to character, condition, and situa-
tion of this woman."

By this language the jury was in effect directed that in
determining whether the wife of the former marriage was liv-
ing when the second marriage took place, they might act
upon the rule of law that when a fact is once shown to have
existed, the law presumes its continuance; and since it has
been shown that the former wife was alive two or three or four
years prior to the second marriage, the law presumes that she
continues to live, upon which presumption of law they were
authorized to act in determining whether the former wife was
living at the time of the second marriage.

The portion of the charge above quoted was excepted to.
Did the Court err in so directing the jury ?  We proceed to
examine this question.

In a prosecution for bigamy the law presumes the inno-
cence of the defendant until the contrary is shown.  The law
also presumes the existence of a person once established by
proof to continue until the contrary is shown, or until a dif-
ferent presumption arises.  " Thus, where the issue is upon the
*life* or death of a person once shown to have been living, the
burden of proof lies upon the party who asserts the death.
But after the lapse of seven years, without intelligence con-
cerning the person, the presumption of life ceases, and the
burden of proof is on the other party."  (1 Greenl. Ev. § 41.)

Mr. Greenleaf states, in the same section, that this period
of seven years was inserted after great deliberation, in the
British statute of bigamy and the statute of leases concern-
ing lives, and has since been adopted from analogy in other
cases.  (See cases cited in note by Mr. Greenleaf.)  The
period of five years is inserted in our statute of bigamy, and
thus with us in such a prosecution as this the presumption of
life ceases at the end of five years.  The language in which

the rule as to each presumption is stated shows that they are disputable.

Now, assuming that it was proven the first wife was living —five years not having elapsed—there are then two presumptions, the one of innocence operating in favor of defendant, and the other of the continuance of life from the proof of prior existence operating against him. Which should obtain, and be adjudged superior? Should one be held superior to the other? and, if so, which one? The rule as declared by Mr. Bishop (see Bishop on Stat. Crimes, § 611) is that they should be held to neutralize each other, and the issue as to the continuance of life from the proof of prior existence should be left to the jury as a naked matter of fact, divested of any presumption of law.

The judgment in *The Queen* v. *Lumley*, 1 Law Rep. C. C. Res. 196, sustains this rule, and, in fact, goes further and holds that the law makes no presumption that a person continues to live from the proof of his or her existence at a former date. In that case, which was a prosecution for bigamy, the facts were as follows: The prisoner married one Victor at St. Helier's, in the Island of Jersey, in the year 1836, and lived with him in England until the middle of 1843, when they separated, and she was taken by her parents back to Jersey, where she resumed her maiden name. On the 9th of July, 1847, she, describing herself as a spinster, married Lumley, with whom she lived until March, 1864. Nothing was heard of Victor from the time the prisoner left him in 1843. No evidence was given of the age of Victor, nor any of the age of the prisoner, except that a witness, who stated she was forty-eight years old, said that the prisoner was her senior. The learned Judge (Lush), before whom the trial was had, directed the jury that there being no circumstances leading to any reasonable inference that he had died, "Victor must be presumed to have been living at the date of the second marriage." The question whether this direction was right or not was reserved for the opinion of the Court.

The case was argued before a Court composed of Kelly, C. B., Cleasby, B., Byles, Lush, and Brett, JJ.

Lush, J., delivered the opinion of the Court. He said: "We are of opinion that the direction to the jury in this case

[stating it as given above] was erroneous. In an indictment for bigamy it is incumbent on the prosecution to prove, to the satisfaction of the jury, that the husband or wife, as the case may be, was alive at the date of the second marriage. That is purely a question of fact. The existence of the party at an antecedent period may or may not afford a reasonable inference that he was living at the subsequent date. If, for example, it were proved that he was in good health on the day preceding the second marriage, the inference would be strong, almost irresistible, that he was living on the latter day, and the jury would in all probability find that he was so. If, on the other hand, it were proved that he was then in a dying condition, and nothing further was proved, they would probably decline to draw that inference. Thus the question is entirely for the jury. The law makes no presumption either way. The cases cited of *Reg.* v. *Twyning,* 2 B. and Ald. 386; *Reg.* v. *Harborne,* 2 A. and E. 540, and *Nepean* v. *Doe d. Knight,* 2 M. & W. 894, appear to us to establish this proposition.

"Where the only evidence is that the party was living at a period which is more than seven years prior to the second marriage, there is no question for the jury. The proviso in the act (24 and 25 Vict. c. 100, § 57) then comes into operation, and exonerates the prisoner from criminal liability, though the first husband or wife be proved to have been living at the time when the second marriage was contracted. The Legislature, by this proviso, sanctions a presumption that a person who has not been heard of for seven years is dead; but the proviso affords no ground for the converse proposition, viz.: that when a party has been seen or heard of within seven years, a presumption arises that he is still living. That, as we have said, is always a question of fact."

Our statute is substantially the same, as far as relates to the point under consideration, as the 24 and 25 Victoria referred to above.

*In re Phene's Trusts,* 5 Law R. Ch. Ap. Cas. 139, the question whether there was any presumption of law that a person continued to live arising upon proof of prior existence was very fully discussed, and it was held that the law makes no such presumption. This was held to apply to civil and crim-

inal cases alike. This question was also discussed at length by Field, J., in a case (*Montgomery* v. *Bevans*, 1 Sawy. 666) tried before him in the United States Circuit Court for California. He reviewed several of the English cases considered in *In re Phene's Trusts*, as well as this case, and came to the conclusion that the law as declared in England in *The Case of Phene's Trusts* was different from the law which obtains in this country; stating at the same time that when this presumption of the continuance of life conflicts with the presumption of innocence, the latter prevails. In the opinion delivered in the case referred to, the learned Justice says: "But the law as thus declared in England is different from the law which obtains in this country, so far as it relates to the presumption of the continuance of life. Here, as in England, the law presumes that a person who has not been heard of for seven years is dead, but here the law, differing in this respect from the law of England, presumes that a party once shown to be alive continues alive until his death is proved, or the rule of law applies by which death is presumed to have occurred, that is, at the end of seven years. And the presumption of life is received, in the absence of any countervailing testimony, as conclusive of the fact, establishing it for the purpose of determining the rights of parties as fully as the most positive proof. The only exception to the operation of this presumption is when it conflicts with the presumption of innocence, in which case the latter prevails." (*Montgomery* v. *Bevans*, 1 Sawy. C. C. R. 666.) The rule thus stated as to these conflicting presumptions by Field, J., is sustained by *Reg.* v. *Twyning*, 2 Barn. & Ald. 385.)

Whichever of the rules appearing from the foregoing is adopted, the portion of the charge above quoted is erroneous. By the portion of the charge referred to, the jury were told that in the determination of the issue as to the continued life of the first wife, they might call to their aid the presumption of law indicated in the words quoted from the charge. The issue on this point should have been left to the jury to be determined, as a matter of fact, upon such reasonable inferences as the evidence supplied, free from any presumption of law.

It is further contended by appellant that the verdict is contrary to the evidence. This is one of the grounds on which

the motion for a new trial was made.  We do not think that
a verdict of guilty on this evidence in regard to the first wife
being in existence when the second marriage was had, should
stand.  The evidence, taking the strongest view of it against
defendant, proved that the first wife was living about three
years prior to the day of the second marriage.  We lay out
of view what defendant is proved to have stated as to "*his
family.*"  This expression may have referred only to his chil-
dren, and he may have used this language in regard to a
family of children, surviving his wife.  It can not be fairly
regarded as an admission by him that the first wife was then
living.  The word *family* in common discourse is frequently
applied to *children* alone.  There is no testimony as to the
age of the first wife, a most material circumstance to be con-
sidered in passing on this point.  We can not perceive that
this evidence furnished a reasonable inference that the first
wife was alive in July, 1880, so as to establish the guilt of
the defendant beyond a reasonable doubt.  In our judgment,
the verdict is not sustained by the evidence, and a new trial
should have been granted on this ground.  We are also of
opinion that the Court should have advised the jury when the
prosecution rested to acquit the defendant.

We will add here what should have been before said, that
the information in this cause is good on general demurrer.
If it had been demurred to on the special ground that it did
not substantially conform to the requirements of §§ 950, 951,
and 952 of the Penal Code, we are not prepared to say that
we should hold that the objection was not well taken.  This
ground was taken on the motion in arrest of judgment.  But
it was then too late to urge it.  It had been waived by a fail-
ure to demur specially.  (Penal Code, §§ 1004, 1012, 1185.)

Judgment and order reversed and cause remanded.

SHARPSTEIN, J., MORRISON, C. J., and MYRICK, J., concurred.