[No. 12519.    In Bank. — June 22, 1888.]

HANNAH A. HOLLISTER ET AL., APPELLANTS, *v.*
ESTANISLAUS CORDERO ET AL., DEFENDANTS,
AND ELLA A. CORLISS FRENCH, RESPONDENT.

76  649
134  576

HUSBAND AND WIFE — COMMUNITY PROPERTY — DESCENT AND DISTRIBUTION.
— Upon the death of the husband, one half of the community property
goes to the wife, and upon the death of the wife, the entire community
property goes to the husband.

ID. — SURVIVORSHIP — PRESUMPTION. — When there is nothing to show
which expired first, and husband and wife have perished in the same
calamity, both being between the ages of fifteen and sixty, the husband
is presumed to have survived.

ID. — MURDER — CALAMITY. — The murder of husband and wife, perpetrated
at the same time, is a calamity within the meaning of section 1963 of the
Code of Civil Procedure.

EVIDENCE — OPINION — MOTION TO STRIKE OUT. — It is not error to strike
out such portions of the testimony of a witness as are mere matters of
opinion as to facts not observed, drawn from facts fully stated by the
witness.

ID. — HEARSAY — VERDICT OF CORONER'S JURY. — The verdict of a coroner's
jury is not admissible to show the time or manner of the death of a hus-
band and wife, who were murdered together. It is a matter of mere
opinion and hearsay.

APPEAL from a judgment of the Superior Court of
Santa Barbara County, and from an order refusing a
new trial.

The action was for partition of the rancho Los Cruces,
brought by the executors and trustees of William W.
Hollister, deceased, who deraigned title to an undivided
interest through Miguel Cordero, the original Mexican
grantee of said rancho. The complaint alleged that
George W. Corliss, deceased, owned one ninth of said
rancho, which had been conveyed to him after marriage
by one of the heirs of Miguel Cordero; that said George
W. Corliss and Lucretia Corliss, his wife, were both
killed at said rancho in January, 1864, and that Lucretia
A. Corliss survived her husband, and inherited one half
of the said interest as community property. Plaintiffs
deraigned title to the interest of said Lucretia Corliss

through the only heir at law of Lucretia Corliss. The defendant Ella A. Corliss French deraigned title to the whole of said ninth interest of George W. Corliss, deceased, through conveyance from his sole heir at law. The court found in favor of the claim of Ella A. Corliss French, and the appeal is by the plaintiffs from that part of the interlocutory decree which awarded to her an undivided ninth interest in said rancho, and from the order refusing a new trial in relation thereto. The statement on motion for new trial showed that the court struck out so much of the evidence of Miguel Burke as stated his opinion or conclusion from the facts which he observed and testified to concerning the appearance of the dead bodies when he arrived at the house of the Corliss family after the murder was discovered; that the man had been killed while he was sitting, and that the woman had been killed out of doors and dragged in. Also so much of the evidence of Thomas S. Martin as stated his conclusion that the woman had run around a rock in the creek, about a hundred yards from the house on the road to the sheep-camp, because there was a small track around the rock that looked like a woman's track, and blood upon the rock, where she had run around it; and the marks showed that something had been dragged over this rock to the house. The verdict of the coroner's jury, which was offered in evidence and excluded, found that Mrs. Corliss was murdered outside of the house and dragged within before the house was set on fire. The further facts are stated in the opinion of the court.

*Fernald, Cope & Boyce,* for Appellants.

*Paul R. Wright,* and *W. C. Stratton,* for Respondent Ella A. C. French.

PATERSON, J.—On January 9, 1864, G. W. Corliss and Lucretia, his wife, were murdered at their home on the Los Cruces rancho, in the county of Santa Barbara, and

the house in which their bodies were left was set on fire
and burned by the parties who killed them.  The land
in controversy, and sought to be partitioned herein, was
the community property of said G. W. and Lucretia
Corliss, and the rights of the parties depend entirely
upon the question, Which one of the spouses died first,
George W. or Lucretia?  The law then provided—as it
does now—that upon the death of the husband, one half
of the community property should go to the wife, and
upon the death of the wife, the entire community prop-
erty to the husband.

Plaintiffs claim that the wife, Lucretia, survived her
husband, and inherited one half of the property.  The
court below found that George W. survived his wife, and
gave judgment for defendant.

The evidence is without conflict.  The witnesses tes-
tify that they arrived at the scene of the murder on the
morning after the killing.  The body of the woman lay
near the door; the hoops of her crinoline lay over her
head, showing that she had been dragged into the house
by the feet; there were small foot-tracks around a large
rock a few yards from the house, and blood upon the
rock; there was a mark upon the ground, indicating that
the body of the woman had been dragged from the rock
to the house, and there was the blood-mark of a small
hand on the stone doorstep, showing that she had
clutched the doorstep as she was being dragged into the
house.  The body of George W. lay in the middle of the
floor near the fireplace, with several large wounds upon
it.  Both bodies were badly burned.  The remains of
the servant—a shepherd —were found several days later
in the bottom of a stream several rods from the house.
This is substantially all of the testimony upon the issue
of survivorship.

We cannot agree with counsel for appellant in saying
that the evidence "points clearly and unmistakably

to the conclusion that the husband was first slain within their dwelling on the ranch, and that the wife was afterward pursued, seized outside of their habitation, murdered, and dragged by the feet over the threshold of the door, and the building then set on fire." It may be that such was the fact; but there is nothing to show *which one expired first.* The husband may have been wounded, and left on the floor of the house while they were pursuing the wife, and may have been alive when the latter was dragged into the house. No one can say from the evidence which one died first. Both may have been living while the house was burning. The court below, we think, properly indulged the presumption authorized by subdivision 40, section 1963, of the Code of Civil Procedure, which reads of follows: " When two persons perish in the same calamity, such as a wreck, a battle, or a conflagaration, and it is not shown who died first, and there are no particular circumstances from which it can be inferred, survivorship is presumed from the probabilities resulting from the strength, age, and sex, according to the following rules: . . . . If both be over fifteen and under sixty, and the sexes be different, the male is presumed to have survived; if the sexes be the same, then the older." Both were between the ages of fifteen and sixty. Both perished in the same calamity. The murder, perpetrated as it was, was a calamity within the meaning of section 1693, *supra,*—as much so as would be a shipwreck or a battle; and the court found that there were no particular circumstances from which it could infer who died first. We think the decision of the court upon this issue was right.

The court did not err in striking out portions of the testimony; they were mere matters of opinion. All of the facts were fully stated by the witnesses.

There was no error in excluding the verdict of the

coroner's jury.   It does not purport to contain a statement of any facts within the knowledge of the coroner or any juror as to the time or manner of the death of Corliss and his wife.   It is a matter of mere opinion and hearsay.

Judgment and order affirmed.

SEARLS, C. J., MCFARLAND, J., SHARPSTEIN, J., and MCKINSTRY, J., concurred.