[S. F. No. 2782.   Department One. — November 23, 1901.]

MARIA F. ROWE, Executrix, Appellant, v. WILLIAM T. SUCH et al., Respondents.

ACTION FOR DEATH — RUNAWAY HORSE — BURDEN OF PROOF — NEGLIGENCE NOT PRESUMED — NONSUIT. — In an action by an executrix to recover for the death of the testator, caused from being struck by a wagon drawn by a runaway horse, the burden of proof is upon the plaintiff to show the negligence of the driver. In the absence of such proof, there is no presumption of negligence arising from the fact that the horse ran away; and the burden is not thereby cast upon the owner of the team, sued as defendant, to explain how or why the runaway occurred; but the defendant is entitled to a nonsuit.

ID. — EVIDENCE — VERDICT OF CORONER'S JURY NOT ADMISSIBLE — HEARSAY. — The verdict of the coroner's jury is not admissible to prove that the death of the plaintiff's testator was caused by the negligence of the defendant. The verdict could not bind the defendant, who was not a party to it, and upon the question of negligence the opinion of the coroner's jury was inadmissible hearsay.

ID. — EXPERT EVIDENCE — COMPETENCY AND SKILLFULNESS OF DRIVER — HYPOTHETICAL QUESTION — PROPER EXCLUSION. — The competency and skillfulness of the driver of the wagon was not a proper subject for expert evidence; and where the only issue related to the negligence of the driver, a hypothetical question addressed to a witness, calling for his opinion as to the competency and skillfulness of the driver, which assumed facts not alleged or proved, was properly excluded.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   John Hunt, Judge.

The facts are stated in the opinion of the court.

J. C. Bates, for Appellant.

Welles Whitmore, C. H. Wilson, and W. W. Watson, for Respondents.

THE COURT.—Plaintiff's testate was killed on Van Ness Avenue, San Francisco, having been struck by a wagon drawn by a runaway horse belonging to defendant Nelson, and this action was to recover damages for the death. At the close of the evidence for plaintiff, the court granted a motion for nonsuit. The appeal is from the judgment and from the order denying plaintiff's motion for a new trial.

The driver of the horse was not called by plaintiff as a witness, and there was no evidence as to what caused the horse to run away. The witnesses Taggard and Wilson testified that their attention was attracted by some one crying "Whoa, whoa," and on looking in the direction of the cry they saw the wagon coming. Witness Taggard testified: "The driver was in the air, and he sat down on the ground, and the horse ran away, and the man jumped up and ran after him. The horse was going towards Van Ness Avenue, and the driver fell off, or got off, about right opposite the door of the armory on Ellis Street." This witness further testified: "The driver was in the air when I saw him, between the seat and the ground. He was off the seat. . . . The horse was not going very fast then. The driver ran after the horse. The horse then ran; by that time the reins were dangling around the horse's feet. The horse then ran so fast that I did not want to try to stop him." The horse went up Willow Avenue to Van Ness Avenue, where he turned down towards Market Street. He ran into a crowd of men who were working on Van Ness Avenue, and collided with deceased, who was so severely hurt that he died shortly after receiving the injury. It is conceded that there was no contributory negligence on the part of deceased.

Appellant contends that she made out a *prima facie* case against the defendant Nelson, under whose management and control the horse had been driven by his driver, Baumert, prior to the accident. Numerous cases are cited in support of the rule laid down in *Judson* v. *Giant Powder Co.*, 107 Cal. 556, namely: "When a thing which causes the injury is shown to be under the management of the defendant, and the accident

is such as in the ordinary course of things does not happen if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." In short, it is here contended that the presumption of negligence arose from the fact that the horse ran away, and that the burden is therefore cast upon the owner to explain how or why it happened. The rule of law here invoked cannot be applied to the state of facts disclosed by the foregoing evidence. The following cases fully support the ruling of the trial court: *Button* v. *Frink,* 51 Conn. 342;[1] *Quinlan* v. *Sixth Avenue R. R. Co.,* 4 Daly, 487; *Gollwald* v. *Bernheimer,* 6 Daly, 212; *Gray* v. *Tompkins,* 15 N. Y. Supp. 953; *Cadwell* v. *Arnheim,* 152 N. Y. 182; *Brown* v. *Collins,* 53 N. H. 442;[2] *Bennett* v. *Ford,* 47 Ind. 264; *O'Brien* v. *Miller,* 60 Conn. 214;[3] *Creamer* v. *McIlvain,* 89 Md. 343;[4] *Herrick* v. *Sullivan,* 120 Mass. 576; *Miller* v. *Cohen,* 173 Pa. St. 488; *Holmes* v. *Mather,* L. R. 10 Ex. 261.

Appellant concedes that in the case at bar the horse ran away because of some unexplained cause. There is absolutely no evidence pointing to negligence on the part of the driver. When he was first seen he was "in the air," and falling from his seat to the ground. Whether he lost control of his horse through negligence is not shown, nor does any fact appear from which negligence could be inferred. Whatever caused the runaway is matter of speculation, pure and simple, and it is as fair to presume that the cause was unavoidable as that it was the fault of the driver. The burden was on plaintiff to show negligence of the driver, failing in which it became the duty of the trial judge to take the case from the jury. It is said in *Button* v. *Frink,* the Connecticut case cited: "If a horse is running away with his driver, there is nothing in the fact itself which tends to show negligence in the driver, or which tends to show how the horse became unmanageable, any more than a house on fire tends to show the origin of the fire, whether accidental or otherwise, and it would seem that it could as well be inferred, in such a case, that the party residing in the house was guilty of negligence in causing its destruction, in the absence of explanatory evidence showing the contrary, as it can be inferred from the mere fact that a horse is running away

---

[1] 50 Am. Rep. 24.                     [3] 25 Am. St. Rep. 320.

[2] 16 Am. Rep. 372.                     [4] 73 Am. St. Rep. 186.

that the driver is guilty of negligence in causing his running, in the absence of proof to the contrary. If such a doctrine should be established as the law, it is not easy to see to what extent it might not be carried." And again: " A man driving furiously along the street runs into my carriage and breaks it. Here the act indicates negligence on the part of the driver. Again, the defendant's horse is running furiously along the street, dragging the shafts of a carriage after him, and runs against and breaks my carriage. This indicates accident only, and not negligence."

The verdict of the coroner's jury was offered in evidence by plaintiff, and on objection of defendants was excluded, and this is urged as error.

Appellant claims that the coroner acts in a judicial capacity, and that the verdict of the jury is *prima facie* evidence of *the cause* of death. It was admitted that the deceased died from the injury, and the only purpose of the offer, therefore, was to prove negligence. Upon the question of negligence the opinion of the jury was but hearsay. (*Hollister* v. *Cordero*, 76 Cal. 649.) Viewed as a judicial proceeding, the inquest could not bind defendant, who was not a party to it. The question was considered in the following cases, and the proceedings at the inquest excluded: *State* v. *County Commissioners*, 54 Md. 426; *Germania Life Ins. Co.* v. *Ross-Lewin*, 24 Col. 43;[1] *Louis* v. *Connecticut Life Ins. Co.*, 58 App. Div. 137; 68 N. Y. Supp. 683; *Pittsburgh etc. Ry. Co.* v. *McGrath*, 115 Ill. 172; *Memphis etc. R. R. Co.* v. *Womack*, 84 Ala. 149; *The Central R. R.* v. *Moore*, 61 Ga. 151.

Plaintiff called as a witness one Martin, and asked him the following question: "I will ask you a hypothetical question. What would you say if the driver of the wagon, going up a grade, or on an even street, in the daytime, the horse in an ordinary jog, would lose control of his horse, and be precipitated to the ground, — what would you say as to the competency or skillfulness of such a driver?" Defendants objected on the ground that the question was irrelevant and immaterial, that no foundation had been laid, and that it assumed facts not in evidence. The court rightly sustained the objection. Hypothetical questions, where allowable at all, must conform to facts proven, which this question failed to do. Furthermore, the pleadings did not put in issue the general skillful-

---

[1] 65 Am. St. Rep. 215.

ness of the driver; the issue raised was as to his negligent management of the horse, which did not necessarily depend upon the general fitness of the driver. The complaint alleged only that the driver was negligent and careless, and mismanaged his horse, and hence the accident. Besides, it was not a case where expert testimony, such as was sought to be elicited, was admissible to prove the competency or incompetency of the driver.

The judgment and order are affirmed.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion on the 24th of December, 1901:—

BEATTY, C. J.—I dissent from the order denying a rehearing. The proposition discussed in the opinion of the Department, and upon which the case is decided, is not the proposition upon which a correct decision depends.

It is true that the appellant does quote and claim the application of the rule thoroughly established by several recent decisions of this court, that "when a thing which causes the injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from the want of care," but she does not contend, and her case does not require her to maintain, that a legal presumption of negligence arose from the mere fact that the horse ran away, requiring the court to instruct the jury that upon proof of that fact alone they must, in the absence of explanation by the defendant, find a verdict in her favor. No question as to the shifting of the burden of proof was or could be involved in the case. The plaintiff had been nonsuited by the trial court, and all that was necessary for her to do in order to reverse that order was to show that she had introduced evidence sufficient to make out a *prima facie* case for the jury,—a case, that is to say, from which negligence might be inferred as matter of fact, as contradistinguished from a presumption of law.

In view of this distinction, the long list of cases cited in the
CXXXIV. Cal.— 37

Department opinion falls very far short of sustaining the ruling of the trial court. Take the first case cited. (*Button* v. *Frink*, 51 Conn. 342.) There, the defendant's horse ran away in consequence of a broken bridle, causing a collision, in which plaintiff was injured. Upon this evidence the trial judge instructed the jury, in effect, "that in the absence of explanatory testimony by the defendant, showing that he was guilty of no negligence, negligence might be inferred against him as matter of law." On appeal, this was held to be error, upon the ground, expressly stated in the opinion, that the court could not instruct the jury, *as matter of law*, that such evidence was sufficient to make out a *prima facie* case of negligence, and to shift the burden of proof to the defendant to explain or excuse it. But they did not decide that on such a case the court could properly grant a nonsuit. On the contrary, they took pains to distinguish the cases in which, upon a similar state of the evidence, nonsuits had been refused, and point out, what is sufficiently apparent, that on a motion for a nonsuit the court can only consider what the evidence tends to prove as matter of fact, and if it is *prima facie* sufficient, leave it to the jury to determine the fact, — while in giving the instruction there in question the court had usurped the province of the jury in holding that evidence from which a jury might or might not infer negligence as a fact established a legal presumption of negligence. So far from holding that the fact of the runaway and collision is no evidence of negligence, the court, in its opinion, uses this plain and unequivocal language: "Now, in suits brought for damages done in these cases, if the plaintiff should prove only the fact of the collision, and the defendant should offer no evidence whatever, the court ought to *charge the jury* that the burden of proof is not in either case thrown upon the defendant *as matter of law*, but that the plaintiff is to recover or not, according as they shall, in the exercise of their judgment, consider the acts as in themselves indicating or not indicating negligence on the part of the respondent. The failure of the defendant to offer any explanatory evidence may operate to *strengthen the plaintiff's case*, but it must always be in a case where the act done carries, in itself, an indication of negligence, or in other words, creates a presumption of fact, not of law, that the defendant had been guilty of negligence."

The italics in the above quotation are mine, and are intended to call attention to the distinction constantly insisted upon

throughout the opinion, between the question of fact involved in the motion for a nonsuit and the unwarranted presumption of law stated in the instruction. Note, also, that upon mere proof of the collision the plaintiff has made a case for the jury which may be strengthened by the failure of the defendant to offer explanatory evidence. Still another thing to be noted in this opinion for its bearing on the present case is the distinction made between the case of a horse running away without a driver, and the cases in which the driver is holding the reins and exerting all his power to check the team. In the latter case it is said that there is nothing in the mere fact of the runaway tending to prove negligence, but there is no question of the authority of those cases in which it has been held that horses running in a public street without a driver is, of itself, evidence of negligence requiring explanation. Several cases holding this doctrine are cited in appellant's brief, and I know of none to the contrary. A single citation will suffice to show the solid basis upon which the doctrine rests: "The fact itself that a team is found running away upon the streets of a city, without a driver, requires explanation as to how and why this should have been, and if the driver is not produced as a witness, or his absence accounted for, it is fair to presume that no satisfactory explanation could have been given." (*Maus* v. *Broderick*, 51 La. Ann. 1153.)

In this case the horse ran away without a driver. The evidence shows that he left the wagon, losing the control of reins and brake before the horse started to run. How he came to leave the wagon, no one knows. He was heard to cry out, "Whoa, whoa," and the witnesses, on turning to look, saw him in the air, between his seat and the pavement. He "sat" on the ground, but immediately got up and ran after the horse, which then for the first time started to run. There is nothing in this evidence to warrant an inference that the driver was thrown from the wagon by reason of some accident. There is no suggestion of an accident, and a sober driver is not likely to be thrown from a slowly moving wagon on one of the city streets. I should infer, on the contrary, and certainly a jury would have been warranted in assuming, in the absence of any explanation, that the driver had dropped the reins, and jumped to the ground for the purpose of recovering them.

The case, in my opinion, was clearly one for the jury.