[S. F. No. 6780.    Department Two.—October 27, 1915.]

## RACHEL BENJAMIN, Respondent, v. DISTRICT GRAND LODGE NO. 4, INDEPENDENT ORDER B'NAI B'RITH (a Corporation), Appellant.

FRATERNAL INSURANCE—DISAPPEARANCE OF INSURED—PROOF OF DEATH —PRESUMPTION OF DEATH FROM SEVEN YEARS' ABSENCE—TIME OF DEATH.—In an action on a contract of insurance issued by a fraternal organization payable to the wife of a member upon production of satisfactory proof of death, provided the member was then in good standing, the evidence showed that the insured disappeared, and in order to make satisfactory proof of death plaintiff relied upon absence for seven years under subdivision 26 of section 1963 of the Code of Civil Procedure. Held, the presumption of death under that provision does not fix the date of death at any time within the seven years, but merely established death at some time during that interval, and therefore by the evidence offered plaintiff did not prove that the insured died subsequently to the forfeiting of his membership, which occurred some four months after the disappearance.

ID.—SATISFACTORY PROOF OF DEATH—LETTER THREATENING SUICIDE.— The disappearance of the insured coupled with a letter that he intended to commit suicide is not satisfactory proof of death.

ID.—WHEN PROOF NOT POSSIBLE—STATUTE OF LIMITATIONS.—A beneficiary of such a contract of insurance is not required to furnish proof of death until such proof is possible under the circumstances of the case, and the statute of limitations does not begin to run until such proof is available to the beneficiary.

ID.—LETTER THREATENING DEATH AS RES GESTAE.—Upon proof of death by the presumption from absence for seven years, the letter written by decedent at the time of his disappearance is competent evidence to establish the date of death as part of the res gestae.

ID.—PREVIOUS ATTEMPT AT SUICIDE EVIDENCE OF LATER MENTAL CONDITION—LAPSE OF TIME AFFECTING WEIGHT OF EVIDENCE.—Evidence of an attempt of decedent to commit suicide seven months prior to his disappearance is admissible as a circumstance tending to show the mental condition of decedent at the time of his disappearance, and the length of time elapsing between the previous attempt and the disappearance relates to the weight rather than to the admissibility of the evidence.

ID.—LETTER OF COUNSEL TO DEFENDANT—LIMITATION OF PURPOSE FOR WHICH RECEIVED—HARMLESS ERROR.—The admission of a letter of one of plaintiff's counsel making demand on defendant for the amount of the policy and containing a statement that letters of

administration had been issued to plaintiff upon the estate of her deceased husband, and that the court had found that decedent died on the high sea within seven years of the issuance of the letters, limited to the purpose of proving that plaintiff had attempted to make proof under the terms of the policy, coupled with a statement of counsel that it did not prove anything else, although probably erroneous, was harmless in view of the limitation of the court of the purpose for which it was received.

ID.—SPECIAL ISSUES FOR JURY.—The court properly refused to submit special issues to the jury regarding the exact date of the death of the insured where the jury was instructed that no recovery by plaintiff was possible unless they found that the insured died prior to the suspension of his certificate of membership.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial.   Robert M. Clarke, Judge.

The facts are stated in the opinion of the court.

Edmund Tauszky, for Appellant.

M. H. Wascerwitz, and L. A. Redman, for Respondent.

MELVIN, J.—Defendant appeals from an adverse judgment and from an order denying its motion for a new trial.

The action was one for the recovery of two thousand dollars upon a beneficiary certificate issued by defendant to plaintiff's husband. By the terms of the certificate defendant agreed to pay two thousand dollars to Rachel Benjamin upon "satisfactory evidence" of the death of the insured and of the fact that "at the time of his death he was neither expelled nor suspended" from the order.

The action was instituted in February, 1909. It was alleged in the complaint that Benny Benjamin, the insured, was on the fourth day of October, 1900, and had been for many years prior to that time, a member in good standing of the defendant corporation; that he disappeared on that date; that he had not been seen nor heard from since; and upon information and belief it was averred that he died on October 4, 1900. It was also set forth in the complaint that subsequent to the expiration of seven years next after the disappearance of her husband plaintiff had furnished to the defendant satisfactory evidence that he died on October 4,

1900. The substantial allegations of the complaint were denied by the answer, and that pleading contained averments that Benny Benjamin was duly and regularly suspended from the Independent Order B'nai B'rith on February 24, 1901, that plaintiff at no time furnished satisfactory evidence of his death; and that at no time prior to January 4, 1909, did she offer any evidence whatever of her husband's death. By the answer defendant also pleaded the alleged bar of the statute of limitations (Code Civ. Proc., sec. 337).

It appeared without material conflict of testimony that Benny Benjamin, prior to his disappearance, was a resident of San Jose; that he was a member of the defendant corporation, that plaintiff was the beneficiary named in his certificate of fraternal insurance, and that his business required of him almost daily round trips between San Jose and San Francisco. On the evening of the 4th of October, 1900, he did not appear at his home, and on the following day his brother-in-law, Mr. Herman Moser, received a letter postmarked San Francisco. This communication was in Mr. Benjamin's handwriting and was as follows:

"Dear Herman: By the time this letter reaches you I am at the bottom of the sea. It is terrible but circumstances are against me. Can't explain. Silence is golden.

"Yours,
"BEN."

Mr. Moser received at the same time but in a separate envelope Mr. Benjamin's commutation ticket, good for trips between San Jose and San Francisco, and his account-book. Plaintiff introduced testimony tending to prove the following facts:

Benny Benjamin had been a devoted husband and father, fond of his home and accustomed to spend all of his leisure time with his family. During the period of nine or ten months prior to his disappearance his conduct had become "abnormal," as one of the witnesses said. He seemed greatly distressed and frequently talked to himself. On some days he was unable to finish his work and required the help of his brother-in-law. On one occasion during this period he had made an unsuccessful attempt to take his life. After his disappearance his family attempted to get some news from him through friends who caused inquiries to be made in Sydney,

Australia, as there was some indication based upon statements of the agent of a steamship company that the missing man had taken passage from San Francisco to that port. These inquiries brought no tidings of him.

There was also testimony tending to show that Benjamin had been serving as a juror in one of the departments of the superior court of Santa Clara County in a criminal case there on trial. When the juror failed to appear for duty on October 5, 1900, an attachment was issued, an inquiry was duly made, and the court found that Benjamin was not then within the state but had departed therefrom. At the trial of the case now on appeal defendant produced the ticket agent upon whose testimony the finding of the superior court, in the matter of the missing juror, had been based. He reiterated his belief that a man to whom he had sold a ticket for passage to Sydney on the night of October 4, 1900, and the same person whom he had seen on board of the steamer leaving on that night for the Australian port, was Benjamin, the man whose photograph had been presented for his inspection. Other matters were shown by the testimony but it is not necessary to consider any further showing made by either litigant.

Appellant insists that if Benjamin died on October 4, 1900, the action is barred by reason of the operation of the statute of limitations; that if reliance is placed upon the presumption arising by reason of the lapse of seven years after the disappearance of Benjamin, then the plaintiff must fail in her effort to recover the insurance, because at the expiration of seven years after his disappearance, Benjamin was not in good standing. Undoubtedly, plaintiff did rely upon the presumption arising under the provisions of subdivision 26 of section 1963 of the Code of Civil Procedure to establish the *fact* of death and upon the evidence offered at the trial to fix the *time* of death. The cause of action, according to respondent's theory, did not arise upon the *death* of Benjamin, but when evidence of his death was furnished, and plaintiff had no satisfactory evidence of the *fact* of death to present to the defendant until after the lapse of seven years from the disappearance of the insured. We see no logical escape from this reasoning. Obviously, the disappearance of Benjamin coupled with the fact that he had written a letter declaring his intention to commit suicide would not furnish satisfac-

tory proof of death. And particularly would such evidence be insufficient in the face of a counter-showing which tended to throw discredit upon his declaration of an intention to take his own life. Therefore, the plaintiff was not in a position to prove the *fact* of death without the aid of the statutory presumption. Having established that fact by the presumptive force of the passage of the requisite time, it became necessary to determine whether the death of Mr. Benjamin occurred before or after the date of the cancellation of his certificate for nonpayment of dues. The jurors were instructed in effect that unless the plaintiff had established the fact of Benjamin's death occurring prior to the date of the forfeiture of the rights asserted under the terms of the certificate, their verdict should be in favor of the defendant. They were also informed that the establishment of death by the presumption upon which plaintiff depended did not fix the time of death at any particular moment of the seven years but only established the fact of death at some time during that period. These instructions gave to the jurors the proper issues upon which to found their verdict.

Appellant stoutly contends that respondent should have presented her proofs soon after her husband's disappearance, and that by failing to do so she subjected herself to the bar of the statute of limitations. But as we have shown by quotation from the certificate, the payment to the beneficiary was not made to depend upon the date but upon the *proof* of death. It has been held that where the policy provided for the offer of proofs of death within six months after its occurrence and the insured disappeared, his body being discovered too late to allow of the presentation of proofs of death within the said period of six months, the delay was excusable. (*Kentzler* v. *American Mutual Accident Assn. of Oshkosh,* 88 Wis. 593, [43 Am. St. Rep. 934, 60 N. W. 1002].) It was said in the opinion in that case (and the same observations are pertinent here), that the contract did not cover "disappearances"; that such agreements must be construed in the light of the conditions necessarily implied by law; that they must be reasonably interpreted; and that, in construing such contracts, the court should have regard to the maxim that the law does not require impossibilities. In a case involving the claim of the administratrix of a person who had been killed by the falling of a building but whose death was not known

until the finding of his body several days later, the court of appeals of New York held that the time limited by the contract as the period within which a claim might be filed by the beneficiary did not begin until the finding of the body. (*Trippe* v. *Provident Fund Soc.*, 140 N. Y. 27, [37 Am. St. Rep. 529, 22 L. R. A. 432, 35 N. E. 316].) So, here, the plaintiff was not required to furnish proofs of death until they existed, particularly in view of the circumstance that the certificate here considered does not require evidence of death to be furnished within any given period following the demise of the insured.

Appellant, in support of its contention that the statute of limitations began to run at the date of Benjamin's death, cites with apparent confidence the case of *Harrison* v. *Masonic Mutual Ben. Soc.*, 59 Kan. 29, [51 Pac. 893]. The opinion in that case does seem to support the view that if the plaintiff depends upon the establishment of death within the period of the vitality of the policy (and of course the plaintiff in such a case always does seek to prove that fact), the statute of limitations begins to run as of the date of the death. After discussing but not deciding the point that it was impossible for plaintiffs to prove the death of Mr. Harrison until the lapse of seven years after his disappearance, the court (two of the three learned justices participating) held as follows: "Where some step must be taken by the plaintiff preliminary to his right to maintain an action, he cannot by delaying it indefinitely prolong the time for commencing his suit. Where the act to be done is wholly within his own control, he must perform it within a reasonable time; and it has been said that a reasonable time can never exceed the period within which an action would have been barred by the statute of limitations in a case where no such preliminary step would be necessary. . . . Even allowing to plaintiffs five years after the time they aver James Harrison came to his death to make proofs of loss, they should have been furnished to the defendant in 1889. They were not furnished for more than five years thereafter. It certainly cannot be said that proofs furnished in July, 1894, were within a reasonable time. If the plaintiffs' cause of action should be held not to have accrued until that time, there would be a most unreasonable extension of the statute of limitations; for a suit might then be commenced at any time before July, 1899. It is clear that the

proofs were not furnished within a reasonable time; and it must be held that whatever cause of action the plaintiffs may have had is barred by lapse of time.'' With all due regard for the learned supreme court of Kansas we are unable to agree with the conclusions reached in the cited case. The court brushed aside the contention that no *proof of death is possible* until seven years from the date of the unexplained disappearance and holds that nevertheless *proof of death* must be furnished within five years from such time. It seems to us that this interpretation of the law gives the statute of limitations the power to elbow the statute of presumptions entirely off the stage, or at least to cut two years from the seven which the legislature of Kansas seems to have made necessary to create a presumption that a person unseen and unheard of during such period is dead. The contract considered in that case required ''satisfactory evidence'' of death as a prerequisite to the payment of the sum mentioned therein, and doubtless it was made in full view of the possibility that the insured *might* disappear from the sight of men for a term of seven years, and the presumption of the statute become the *only* ''satisfactory evidence'' that he had left this life, yet the logic of the decision is that nevertheless ''satisfactory evidence'' must be forthcoming within the time fixed by the statute of limitations, if the beneficiaries are to obtain any relief. Such an interpretation of the law would make it highly desirable to beneficiaries that those insured in their favor should die (if die they must) obviously and within the ken of witnesses.

The fact of death having been established, the letter written by Mr. Benjamin to Mr. Moser was competent evidence tending to fix the date of his death. It tended to establish suicide and the date thereof and it was admissible as part of the *res gestae.* (*Rogers* v. *Manhattan Life Ins. Co.,* 138 Cal. 289, [71 Pac. 348].)

Appellant assigns as error the admission of evidence that seven months prior to his disappearance Benny Benjamin made an attempt at suicide. It is argued that proof of such act on his part was not proper as establishing matters belonging to the *res gestae,* and moreover that it was too remote in point of time from the date of the disappearance of Benjamin to be admissible in this case upon any theory. *Jenkin* v. *Pacific Mutual Life Ins. Co.,* 131 Cal. 123, [63 Pac. 180],

is cited as authority for the rejection of such evidence. That was a case in which the matter to be determined was whether or not deceased committed suicide. If he did defendant was not liable. The insurance company introduced testimony to the effect that an indefinite number of days before he was shot, the insured had made several declarations tending to show that he contemplated suicide. This court held that as against the beneficiary and her assignee, these declarations not accompanying nor explanatory of any act were not competent evidence. But in this case the acts and conduct of deceased within a reasonable period of his disappearance were admissible as showing his state of mind at the date of the alleged suicide. Any facts or circumstances relating to the character, habits, condition, state of mind or any of those things which usually control the conduct of a man are competent evidence from which may be inferred the death of one absent and not heard from, whatever may have been the duration of his absence. (*Tisdale* v. *Connecticut Mutual Life Ins. Co.,* 26 Iowa, 176, [96 Am. Dec. 136].) Acts tending to show Mr. Benjamin's state of mind at or about the time of his disappearance were proper for consideration as indicating the probability of his having committed suicide according to the declarations in his letter. The lapse of time between such acts and his disappearance was a matter relating rather to the weight than to the admissibility of the evidence concerning such acts. (*Blackburn* v. *State,* 23 Ohio St. 146, 165; *Boyd* v. *State,* 14 Lea (Tenn.), 176.)

At the trial the court allowed plaintiff to introduce in evidence a letter written by one of her counsel making demand upon defendant for the two thousand dollars for which this action was subsequently brought. Among other statements in the letter was one to the effect that letters of administration had been issued to Rachel Benjamin upon the estate of her deceased husband, and that the court had found that he had died upon the high seas within seven years of the commencement of the proceedings in probate. The letter was merely admitted to show the fact that plaintiff attempted to make proof of death or to furnish evidence thereof under the terms of the policy. In receiving it in evidence the court carefully limited its scope, and in offering it counsel for plaintiff asserted that the letter did not prove any facts stated in it. Appellant contends that nevertheless the letter was

prejudicial to its interests as the document indirectly placed before the jury alleged facts which could not have been presented directly. Doubtless the court admitted the letter as tending to show that proof of death was tendered because by the terms of the contract such proof was a prerequisite to recovery thereon. But appellant insists that it had not denied the fact that demand and attempted proof of death had been made by plaintiff. Moreover, the letter was in no sense, says defendant's counsel, a *proof* offered by plaintiff but was merely a declaration of counsel. Therefore its receipt in evidence was, according to appellant's view, gross error. Conceding that the ruling admitting the letter in evidence was erroneous, it was harmless in view of the court's careful limitation of the purpose for which the exhibit was received. (*Menk* v. *Home Ins. Co.*, 76 Cal. 55, [9 Am. St. Rep. 158, 14 Pac. 837, 18 Pac. 117].)

The trial court did not err in refusing to submit special issues to the jury regarding the exact date of Benjamin's death. The jurors were fully instructed that no verdict for plaintiff was possible unless they found from the evidence that Benjamin died prior to the date of the suspension of his certificate in February, 1901. This was sufficient.

The judgment and order are affirmed.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.