[Civ. No. 2462. Fourth Appellate District.—September 27, 1939.]

In the Matter of the Estate of JOHN WILLIAM NEWMAN, Deceased. JULIA N. SMITH et al., Appellants, v. CATHERINE L. NEWMAN, Executrix, etc., et al., Respondents.

C. B. Conlin and E. R. Simon for Appellants.

Forgy, Reinhaus & Forgy for Respondents.

GRIFFIN, J.—John William Newman died October 30, 1937, and left a will and codicil in which he referred to Catherine L. Newman, one of the respondents herein, as his wife, nominated her as executrix and left her his entire estate. The will and codicil were duly admitted to probate on November 19, 1937. Thereafter the appellants herein, who were the sister and brother of the decedent, filed a contest of the will and codicil and alleged, in addition to other grounds which have been abandoned by the appellants, that the respondent Catherine L. Newman was married and had a husband living at the time she married the testator in September,

1922, and that the will and codicil were procured by fraudulent representations of Catherine L. Newman in that she was free to marry. The contestants and appellants alleged in their petition that the respondent, Catherine L. Newman, and John William Newman, the testator, entered into a *pretended marriage ceremony* in September, 1922, and at that time the respondent, Catherine L. Newman, then had a husband by a prior marriage who was living and respondent had never been granted a final judgment of divorce and was not free to marry the testator although she had continuously represented herself to the testator to be, and he believed that she was, his wife. The respondent, Catherine L. Newman, stipulated that she had married Herbert W. Smith in 1905, and that Ruth S. Whidden, the other respondent, was born in 1907 as a result of that marriage. The appellants did not endeavor to prove that Herbert W. Smith was alive in 1922 or at any time other than the dates covered by the stipulation, nor did they offer any proof that if he were living the prior marriage was not dissolved or annulled. For proof of the allegation of their complaint, they have the stipulation that a marriage was entered into with Herbert W. Smith in 1905, and the allegation of their petition that respondent entered into a pretended marriage ceremony. It was admitted by the answer that the respondent Catherine L. Newman and the testator had entered into a marriage ceremony and lived together thereafter as husband and wife. After proving the facts stated, they rested and the court granted a nonsuit. This appeal is based upon the ruling of the trial court in granting a nonsuit to two of the causes of action, and from the judgment that followed.

The evidence upon the question of the death of her father consisted in the testimony of Ruth S. Whidden, one of the respondents, who was called for cross-examination by the appellants under section 2055 of the Code of Civil Procedure. On redirect examination by attorneys for respondents, Ruth S. Whidden testified that her father, Herbert W. Smith, had died in 1908, when she was 17 months old, and further testified, on further cross-examination by appellants' counsel, that her knowledge of her father's death was based mainly on certain documents received in evidence. Over the objections of attorneys for appellants, the respondents introduced, and the court received into evidence, these documents, which were

a certificate of the coroner of the city and county of San Francisco, reciting an inquest held on the remains of one H. W. Smith, and a copy of the coroner's jury's verdict rendered as to the death of said H. W. Smith; a telegram dated August 14, 1908, to "Mrs. C. L. Smith, of Los Angeles," from said coroner; a letter written by the coroner on August 17, 1908, to a "Mrs. B. I. Strickland, of Los Angeles," and a letter written by one "Mrs. D. A. MacDonald" addressed to "Mrs. Catherine L. Smith, El Monte, California". The telegram and letters referred to the death of "H. W. Smith".

The testimony of Ruth S. Whidden was introduced over the persistent objections of counsel for petitioners that the questions propounded to said witness were not proper cross-examination and called for the opinion and conclusion of the witness and for hearsay, and the court refused to strike out the testimony of the witness.

Appellants argue that there was no testimony introduced to the effect that the said "H. W. Smith" referred to in the coroner's certificate and in the telegram and two letters was the same person as "Herbert W. Smith", the husband of the respondent Catherine L. Newman, and contend that under the legal evidence, the respondent Catherine L. Newman had a former husband living at the time of her marriage to the decedent, and that the will and the codicil to the will of the decedent were void. It is claimed that under the oral stipulation to the fact of marriage of the respondent Catherine L. Newman and one Herbert W. Smith in 1905, introduced in evidence at the trial, and paragraph 32, section 1963 of the Code of Civil Procedure, the presumption is raised that the said former husband was still living, and said presumption existed until it was disproven by legal evidence. (Citing *Estate of Carson,* 184 Cal. 437 [194 Pac. 5, 17 A. L. R. 239], and *Bancroft* v. *Bancroft,* 9 Cal. App. (2d) 464 [50 Pac. (2d) 465].)

The next point claimed is that the coroner's certificate or report of a death, or the verdict of a coroner's jury, is not admissible in evidence to prove the death of a person named in the certificate or report or verdict. (Citing *Mar Shee* v. *Maryland Assur. Corp.,* 190 Cal. 1, 4, 5 [210 Pac. 269]; *Hollister* v. *Cordero,* 76 Cal. 649, 653 [18 Pac. 855]; *Lusardi* v. *Prukop,* 116 Cal. App. 506, 509 [2 Pac. (2d) 870]; *Rowe* v. *Such,* 134 Cal. 573, 576 [66 Pac. 862, 67 Pac. 760]; *Estate of*

*Dolbeer,* 149 Cal. 227, 246, 247 [86 Pac. 695, 9 Ann. Cas. 795].)

For the same reasons and under the same authority, appellants charge that the ruling of the court admitting in evidence the telegrams and letters over objections was also erroneous and prejudicial.

Respondents maintain that the burden of proving that Herbert W. Smith was living in September, 1922, and that his marriage to the respondent Catherine L. Newman had not been terminated or annulled was upon appellants and that as the bill of exceptions contains no evidence of these facts that then the law presumes that the marriage of respondent Catherine L. Newman and the testator was valid, citing *Hunter* v. *Hunter,* 111 Cal. 261, 267 [43 Pac. 756, 52 Am. St. Rep. 180, 31 L. R. A. 411], in which it was said:

"This presumption of the continuation of life is, however, overcome by another. It is presumed that a person is innocent of crime or wrong. (Code Civ. Proc., sec. 1963.) There is also a presumption, and a very strong one, in favor of the legality of a marriage regularly solemnized. Rather than hold a second marriage invalid and that the parties have committed a crime or been guilty of immorality, the courts have often indulged in the presumption of death in less than seven years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce. A more correct statement perhaps would be that the burden is cast upon the party asserting guilt or immorality to prove the negative—that the first marriage had not ended before the second marriage."

In *Estate of Gertrude C. Pusey,* 173 Cal. 141 [159 Pac. 433], this rule was laid down:

"It is well settled in this state that when a *marriage* has been shown in evidence the law raises a strong presumption of its legality, casting the burden of proof upon the person attacking it and requiring him to show that it is illegal and void. This burden was not met in the matters at bar."

It was also held in that case that the illegality of the marriage of the testatrix was not established by evidence merely showing a previous marriage of the man to another woman, and the invalidity of the decree purporting to divorce him therefrom, because there was no evidence tending to show whether or not such woman was alive at the date of the mar-

riage to the testatrix. (See, also, *Estate of Hughson*, 173 Cal. 448 [160 Pac. 548] ; *Wilcox* v. *Wilcox*, 171 Cal. 770 [155 Pac. 95] ; *Immel* v. *Dowd*, 6 Cal. App. (2d) 145 [44 Pac. (2d) 373] ; *Luckett* v. *La Tour*, 122 Cal. App. 271 [9 Pac. (2d) 886] ; *Marsh* v. *Marsh*, 79 Cal. App. 560 [250 Pac. 411] ; *Hamburgh* v. *Hys*, 22 Cal. App. (2d) 508 [71 Pac. (2d) 301] ; 34 A. L. R. 464; 77 A. L. R. 729.)

In reference to the second marriage, we notice with interest the stipulation in reference to the two marriages, which was as follows: ''By Mr. Simon: I have talked to Mr. Reinhaus, and I believe he will stipulate to one matter which will shorten the trial of the case, and that is this: I believe, Mr. Reinhaus, that you will stipulate that Catherine L. Newman, one of the respondents, *prior to her marriage to John William Newman* was married to a man by the name of Herbert W. Smith in 1905, and that Ruth Whidden, the other respondent, was born in 1907 as the result of that unity. Mr. Reinhaus: So stipulated.''

We are firmly of the opinion that the evidence, pleadings, and stipulation above mentioned are sufficient to establish as a fact the second ceremonial marriage and bring the instant case within the rule laid down in *Immel* v. *Dowd, supra* (citing other cases), in which *McKibbin* v. *McKibbin*, 139 Cal. 448 [73 Pac. 143], is cited as holding that ''proof of a prior marriage and the continued life of both spouses was not sufficient to make a *prima facie* case as against a second ceremonial marriage ; that there must be further showing that the first marriage had not been set aside by judicial decree''. Appellants in the instant case, therefore, did not sustain the burden of proof cast upon them.

 It affirmatively appears from the testimony that the respondent daughter, Ruth S. Whidden, at the time of trial, was of the age of 31 years and testified that her father, Herbert W. Smith, died in 1908, when she was 17 months old. In response to a question by Mr. Simon: ''Q. How do you know your father is dead?'' she replied: ''A. I have seen legal and definite evidence of that.'' She also testified that she gained knowledge of this fact from the documents above described, shown to her by her mother, as well as ''letters written from the people he was living with at the time speaking of his death''. She also talked to her mother about her

father's death and she stated she "heard the whole story" from her.

In *Anderson* v. *Parker*, 6 Cal. 197, a case in which it was incumbent upon the plaintiff in ejectment to show the death of his ancestor, the court said: "We are of the opinion that hearsay information of the death, derived from the immediate family of the deceased, is sufficient *prima facie* to establish the fact, and was properly admitted." See, also, *Estate of Paulsen*, 179 Cal. 528 [178 Pac. 143], in which 1 Greenleaf on Evidence, sixteenth edition, section 114f is cited as follows: "The term 'pedigree' embraces not only descent and relationship, but also the facts of birth, marriage, and death, and the times when these events happened."

Under section 1870, subdivision 11, of the Code of Civil Procedure, evidence may be given of "common reputation existing previous to the controversy . . . and in cases of pedigree. . . . ". (See, also, *Benjamin* v. *District Grand Lodge, etc.*, 171 Cal. 260 [152 Pac. 731] ; *People* v. *Ratz*, 115 Cal. 132 [46 Pac. 915].) ■ The law, of course, presumes that one once shown to be alive continues alive until either his death is proved or the rule applies by which death is presumed to have occurred. (Sec. 1963, Code Civ. Proc., subd. 26; *Estate of Ross*, 140 Cal. 282 [73 Pac. 976].) This presumption of life is received, in the absence of any countervailing testimony, as conclusive. One exception to its operation is when it conflicts with the presumption of innocence, in which case the latter prevails. (*People* v. *Feilen*, 58 Cal. 218 [41 Am. Rep. 258].)

■ We are convinced that the testimony of the witness respecting the fact and date of death was not hearsay under the circumstances related. The admission of the documentary evidence, although objectionable, was not, under the circumstances, prejudicial. It tended only to corroborate a fact established by independent, competent evidence.

For the reasons stated, the judgment and order from which this appeal has been perfected are affirmed; respondents to recover costs on appeal.

Marks, Acting P. J., concurred.