[Sac. No. 3207.   In Bank.—June 19, 1923.]

MIKE MAROVICH, as Administrator, etc., Respondent,
v. CENTRAL CALIFORNIA TRACTION COMPANY
(a Corporation), Appellant.

[1] NEGLIGENCE — ACTION FOR DAMAGES — FALL OF PASSENGER FROM
STREET-CAR—CONDITION OF TRACK—EVIDENCE.—In this action for
damages for the death of plaintiff's intestate by reason of falling
or being thrown, while riding as a passenger on a so-called one-
man street-car belonging to defendant, through an open doorway
used as an entrance and exit for passengers and situated at the
right front end of the car to the right of the motorman, there is
no evidence to support the specification in the complaint of alleged
negligence on the part of the defendant in that the track was
uneven and unsafe.

[2] ID.—FAILURE TO EQUIP CAR WITH MIRROR—EVIDENCE.—In such an
action, the fact that the defendant's car was not equipped with
a rear-view mirror in front of the motorman did not constitute
negligence where it was not shown that such appliance was known
to practical men or that it had ever been tested by practical use,
and the most that could be said under the evidence is that to
adopt it would be a mere speculative and untried experiment.

[3] ID.—PROXIMATE CAUSE—EVIDENCE.—In such an action, even if
it could be said that the omission of such a mirror was a negligent
omission, it could not have been a proximate cause of the injury
to the decedent where no chain or causation between the omission
of the mirror and the injury can be perceived.

[4] ID.—INSTRUCTION—ERROR.—In such an action, the giving of an
instruction that "If you believe that the street-car . . . was not
equipped with a mirror ahead of the motorman, and if you further
believe that the failure to so equip this car on the part of the
defendant was negligence, and that this negligence directly con-
tributed to the death of" deceased, "without fault on her part,
your verdict will be in favor of the plaintiff," constituted rever-
sible error in the absence of waiver of the error by appellant
or estoppel against it.

[5] ID.—FINDING—ATTACK UPON—ESTOPPEL—WAIVER.—The defendant
in such an action is not debarred from urging upon appeal that
the evidence is insufficient to support a finding of negligence
against it on the issue of the failure to have the street-car equipped

1. Negligence of passenger in getting on or off moving street-
car, note, 30 L. R. A. (N. S.) 270.

with a mirror because it argued such issue to the jury; nor is the defendant bound by the jury's finding on such issue, in the absence of evidence to support the finding, because it requested, and the court gave an instruction, "that to entitle the plaintiff to recover in this action it must appear from the evidence that the injuries sustained by the decedent were occasioned by the carelessness or negligence on the part of defendant or its servants or employees as charged in the complaint"; nor was defendant's right to attack such finding waived by failure to object to proof of the fact that the car was not equipped with such mirror.

[6] ID.—ABSENCE OF GATE—EVIDENCE.—In such an action there is no evidence which would support a finding that the failure of the defendant to equip its car with a gate which could be opened for the entrance and exit of passengers and kept closed at all other times constituted negligence.

[7] ID. — STOPPING OF CAR — REQUEST OF PASSENGER — FAILURE OF MOTORMAN—EFFECT OF.—In such an action, while the evidence is sufficient to support the allegation in the complaint that the motorman negligently failed to stop the car at a certain street after having been requested so to do, there is an entire absence of a sequential relationship of cause and effect between this negligent omission and the injury.

[8] ID.—EVIDENCE—WITNESSES.—The fact that a jury may disbelieve the testimony of a witness who testifies to the negative of an issue does not of itself furnish any evidence in support of the affirmative of that issue, and does not warrant a finding in the affirmative thereof unless there is other evidence in the case to support such affirmative.

[9] ID.—SPEED OF CAR—EVIDENCE.—In such an action, the allegation in the complaint that the motorman negligently propelled the street-car past the street at which he was requested to stop at a dangerous rate of speed is unsupported by the evidence.

[10] ID.—BURDEN OF PROOF — INSTRUCTION — EVIDENCE — PLEADING.— In such an action, an instruction that if the jury believe that deceased "was killed while riding as a passenger on the street-car of the defendant by defendant's operation of any of its instrumentalities, then I instruct you that the defendant is called upon to show either that her death was occasioned by inevitable casualty which human foresight could not have prevented, or was due to contributory negligence on her part, and if you further believe that the defendant has not done this, your verdict should be for the plaintiff," should not have been given under the issues as framed, since the effect of the instruction was to cast upon the defendant

---

10. Rule of *res ipsa loquitur* as relieving plaintiff of burden of showing negligence, note, Ann. Cas. 1914D, 908.

the burden of exculpating itself not only from the negligent acts and omissions charged in the complaint, but also from all others conceivably applicable to the case.

[11] Id.—Pleading—Res Ipsa Loquitur—Instructions.—Where the plaintiff in his complaint makes no general allegation of negligence, or no allegation of general negligence, instructions applying the doctrine of *res ipsa loquitur* should not be given, and this must be so for the reason that in such case the plaintiff can recover only upon proof of one or more of the specific acts or omissions alleged in his complaint.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Reversed.

The facts are stated in the opinion of the court.

Butler & Van Dyke for Appellant.

Downey & Downey and George A. Work for Respondent.

MYERS, J.—Defendant appeals from a judgment in favor of plaintiff in an action for damages for the death of plaintiff's intestate by reason of falling or being thrown from a street-car of the defendant while riding thereon as a passenger. The grounds urged upon the appeal are that the evidence is insufficient to sustain the implied finding that the defendant was negligent; that it is insufficient to sustain the implied finding that decedent was free from contributory negligence, and that the court erred in its instructions to the jury. The specifications of negligence in the complaint are five in number: (1) That the defendant's track was uneven and unsafe; (2) that the defendant's car was not equipped with a rear-view mirror in front of the motorman; (3) that the exit of the car was not guarded by a door or gate; (4) that the motorman negligently failed to stop the car at Q Street after having been requested to do so; (5) that he negligently propelled the car past Q Street at a dangerous rate of speed. The theory of plaintiff appears to have been that decedent had requested the motorman to stop at Q Street, to which he had assented; that she thereupon took a position near the exit preparatory to alighting; that he negligently failed to

---

11. *Res ipsa loquitur* as affected by circumstances tending to negative negligence by defendant, note 22 A. L. R. 1471.

stop the car, and that she fell or was thrown to the ground by the motion of the car.

The car was a small street-car of a type in common use, having a central inclosed section with open platforms at the front and rear. Upon the front platform there were three seats on the left side and one upon the right side, with a central aisle between them, each seat being for two passengers facing forward. The only opening for the ingress and egress of passengers was a doorway at the front end of the right side of the car, to the right of the motorman. There were two steps below the level of the platform leading up to this doorway. It was equipped with a gate which could be closed, but in practice never was closed, and was not intended to be closed, except during the times when the car was being operated in the opposite direction, at which times this gate was kept closed and a corresponding doorway at the opposite end of the car was kept open. The car was operated as a one-man car.

The accident occurred at about 8:23 P. M. of September 25, 1919, while the car was proceeding along K Street, in the city of Sacramento, a paved street in the residence district. It was after dark, but the car was lighted and the street lights were burning. Decedent had boarded the car and taken a seat in the inclosed section, intending to alight at Q Street. She had made the same trip and alighted at the same place frequently. While the car was stopped at the intersection of T Street, three blocks before reaching Q Street, she went to the front platform and spoke to the motorman, mentioning either the words "Q Street" or "U Street," to which he made some response. He testifies that she asked him about U Street, and that he told her it was one block back, but in support of the verdict we must assume that she asked him to stop at Q Street and that he assented thereto. She then took a position near the front door of the closed section and remained there until after the car had passed Q Street, and when it was about one hundred feet beyond Q Street she stepped quickly to the exit way and, without pausing or hesitating, stepped off the car and fell to the ground, striking her head violently upon the pavement and fracturing her skull. The car at the time was running full speed, about fifteen or eighteen miles per hour, which was the customary speed

on that line when no stops were about to be made, and it had not slackened its speed at or near the intersection of Q Street. The car was equipped with electric push-buttons at intervals of thirty inches along the sides of both the closed and open sections for the purpose of signaling to the motorman. But the decedent subsequent to the conversation at T Street gave him no signal or intimation of any kind of her intention to alight.

The witnesses vary slightly in their descriptions of the manner in which she left the car. Miss Button, a witness for the plaintiff, was seated in the front open section. She testified: "She walked to the door; she took hold of the—with her right hand—she put her foot down like this; she went right out straight into the dark, looked to me as though she turned a somersault; I don't know; she put her foot down just like this, she went out. . . . I saw her put her foot down; she took hold of the door; she went right out in the air. . . . Held on the right-hand side of the car, then just stepped off in the air, the way she did. . . . I don't know whether her foot reached the step; I saw her foot go down; instead of stopping she went on." Reims, the motorman, called as a witness for plaintiff, testified: "She just walked off through the door and down on the steps. . . . She walked right out. . . . She was walking very fast." Mr. Reynolds, a witness for defendant who was seated within the closed section, testified: "As I was sitting inside she stepped about like this [showing]—she fell over—I saw her start off; next I saw her when I looked out the window, she was on the street. Q. You saw her walk up to the door? A. And start forward, start forward—I could not say. Q. Just how did she start forward, you mean—how did she start forward? A. She walked up—there is—I don't know —the door, of course she put her hand against this— That is up to the door— Just right in front of the steps, then just stepped right forward. Q. Could you see from where you were whether she stepped down? A. I could not see whether she stepped down on the steps, the way the door was placed on the outside—I could not see until I saw her on the street—I saw her start forward; I thought, I knew, she was going to fall, I looked out of the window and saw her on the street." The witness Tanner, called for defendant, was seated with his wife on the front open section. He

testified: Q. Then what happened, what did the woman do immediately leading up to the accident? A. Started to walk right out of the car, took hold of that iron, that bar—stepped right off the car. . . . Q. After she got to the edge of the platform leading down to the steps, describe her movements, what happened. Q. She stepped right in the air, she was off the car then. Q. Did you see her take hold of anything with her hand? A. I saw her right hand was taking hold of the iron that is there for that purpose, and walk right off in the air." Mrs. Tanner, also called for the defendant, testified: "Q. When she started, after you crossed Q Street, when she started forward describe her movements. A. She just walked forward, walked off the car. . . . Q. When she stepped off the platform—did she hesitate before she stepped off? A. No. Q. What did she do? A. No, she walked right off the platform. . . . Q. Do you know whether as she stepped off the edge of the car she reached the top step? A. I do not think so. Looked to me she walked right off the top of the platform." The foregoing comprise all of the witnesses who testified to the happening of the accident. The witnesses all agree that subsequent to the conversation at T Street the decedent gave no signal or other intimation to the motorman of her intention to alight; that the car was proceeding at full speed, which they estimated at fifteen to eighteen miles per hour; that decedent did not stop or pause or hesitate when she reached the exit of the car, and that there was no slowing of the speed of the car until after she had left it. The motorman testified that when he first saw her she was in the act of stepping down on to the first step; that he immediately threw off the power and applied the brakes, but that decedent proceeded rapidly down the steps and on to the pavement, and that the brakes did not take hold so as to check the speed of the car until after decedent was on the pavement.

[1] We will now consider the several allegations of negligence with a view to determining the claimed insufficiency of the evidence to sustain them. There is no evidence to support the allegation that the track was uneven and unsafe. Respondent calls our attention in this connection to the fact that four photographs were introduced showing the track in the vicinity of the accident. These photographs do not disclose the existence of any unevenness, irregularity, or

other defect. So far as is disclosed by their examination the track appears to have been in excellent condition and constructed in accordance with the accepted method of constructing street railway tracks in paved streets. Furthermore, there was no evidence that there was at any time any swaying, jolting, or other unusual movement of the car from which the existence of such defect might be inferred.

[2] It was shown in the evidence that the car was not equipped with a rear-view mirror. But there was no evidence to support the conclusion that the omission of such a mirror was a negligent omission. Not only was there an entire absence of direct evidence upon this point in the form of expert testimony, but there was also an entire absence of indirect evidence showing that such appliances had been or were in practical use at any time or place. Respondent relies upon section 2100 of the Civil Code, which provides that "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill," and upon the statement in *Treadwell* v. *Whittier*, 80 Cal. 574 [13 Am. St. Rep. 175, 5 L. R. A. 498, 22 Pac. 266], to the effect that "they are bound to keep pace with science, art and modern improvements in supplying safe vehicles, and must adopt the most improved modes of construction and machinery and appliances of safety in known use"; they are "bound to use the best precautions in known practical use to secure the safety of their passengers, but not every possible preventive which the highest scientific skill might have suggested"; they are "bound to have such vehicles and machinery . . . as the improvements known to practical men and tested by practical use may suggest, but not to take every possible precaution which the highest scientific skill might suggest, nor to adopt any mere speculative and untried experiment." The mere statement of the rule points to the insufficiency of the evidence herein. It was not shown that such appliance was known to practical men or that it had ever been tested by practical use, and the most that could be said under the evidence is that to adopt it would be a mere speculative and untried experiment. [3] Even if it could be said that the omission of such a mirror was a negligent omission, it is difficult to conceive that it could

have been a proximate cause of the injury to the decedent. A proximate cause is an efficient cause, and we are unable to perceive any chain or causation between the omission of the mirror and the injury to decedent. (*Puckhaber* v. *Southern Pac. Co.*, 132 Cal. 363 [64 Pac. 480].) [4] The trial court instructed the jury: "If you believe that the street-car . . . was not equipped with a mirror ahead of the motorman, and if you further believe that the failure to so equip this car on the part of the defendant was negligence, and that this negligence directly contributed to the death of Katherine Marovich, without fault on her part, your verdict will be in favor of the plaintiff." Under the circumstances of the case it is not only possible but highly probable that the verdict of the jury was founded upon this erroneous conception of negligence, from which it follows that the judgment must be reversed, unless it can be said that this error was waived by appellant, or that it is estopped to complain thereof. (*O'Meara* v. *Swortfiguer, ante*, p. 12 [214 Pac. 975].) [5] It is suggested that appellant argued this issue to the jury and thus in effect consented that the jury should pass upon it, but it has never been held, so far as we are advised, that the circumstance that a party has argued a question of fact to the jury debars him from urging upon appeal that the evidence was insufficient to support a finding upon that issue. Appellant might properly have requested the trial court to instruct the jury that the evidence was insufficient to support a finding in favor of plaintiff upon this issue. It did not do so, but requested, and the court gave, the following instruction: "The court instructs the jury that to entitle the plaintiff to recover in this action it must appear from the evidence that the injuries sustained by the decedent were occasioned by the carelessness or negligence on the part of defendant or its servants or employees *as charged in the complaint*." (Italics ours.) It is argued that by requesting this instruction appellant, in effect, consented and stipulated to the submission of this issue to the jury and should, therefore, be bound by the jury's finding thereon. There is no merit in this contention. The requesting and giving of this instruction were in no sense equivalent to a stipulation or a declaration that the jurors might make a finding of negligence in the absence of evidence to support the same. It

cannot be said that the appellant waived this point by failing to object to proof of the fact that the car was not equipped with such mirror. Plaintiff was entitled to prove this circumstance as a part of the *res gestae* and in support of his allegation. He might have followed up this proof by evidence tending to show that such omission was a negligent omission, but he did not do so.

The proof shows that the exit was provided with a gate which could be closed, but it appears from the testimony of the motorman and from an inspection of a photograph of the car, which is in evidence, that it was not such a gate as is intended to be opened and closed each time a passenger enters or leaves the car. The question of negligence in this behalf, therefore, is not, was the motorman negligent in not having the gate closed at this particular time, but was the company negligent in not having equipped its car with a gate which was to be opened for the entrance and exit of passengers and kept closed at all other times? If the car had been provided with such a gate it would be a natural and reasonable inference that it was the duty of the motorman to close it, and the question of his negligence in failing to do so would be properly submissible to the jury. [6] The real question of negligence in this behalf relates to the failure of the defendant company to equip its car with such a gate, and the evidence is as barren of any proof which would support a finding that such failure was negligent as it is with respect to the omission of the mirror. Counsel for respondent suggests that the court may take judicial notice of the fact that there are thousands of street-cars in operation which are equipped with such gates. If this be true, the court must at the same time take notice of the fact that there are other thousands of cars in operation which are not so equipped, and the question whether the omission of such equipment is negligence should not be submitted to the jury upon the basis of pure conjecture or speculation, wholly unguided by evidence.

[7] In support of the fourth allegation of negligence it must be said that the evidence was sufficient to support a finding that the motorman negligently failed to stop the car at Q Street after having been requested so to do. But, again, there is an entire absence of a sequential relationship of cause and effect between this negligent omission and the

injury. It is true that if the car had been equipped with a gate at this exit and the gate had been closed the accident would not have happened. But it is not enough to prove proximate cause to show that the injury would not have resulted in the absence of the negligent omission. Plaintiff must go further and show that the negligent omission was an efficient cause from which the injury followed in a natural and continuous sequence, unbroken by any efficient intervening cause. In the instant case it is clear that the proximate cause of the injury was the act of the decedent in walking off the car while it was in motion. With respect to the absence of the gate, her act in so doing was an efficient intervening cause. It is the theory of respondent that she was induced by her reliance upon the motorman's promise to stop at Q Street to take a position of danger near the exit, preparatory to alighting from the car, that the motorman, seeing her there, was reminded of his omission to stop; that he then suddenly and negligently applied his brakes and that the sudden checking of the speed of the car caused her to fall. If this theory were supported by the evidence it would serve to connect up each of the alleged specifications of negligence—the omission of a mirror, the omission of a gate and the failure to stop—as proximate contributing causes of the injury. Appellant points out that this theory of the case is entirely outside of the issues as tendered by the complaint. But a more serious objection to it is that it is wholly unsupported by the evidence. There is no evidence of any reduction of speed until after decedent had left the car. Respondent suggests that the jurors might have believed that portion of the motorman's testimony wherein he says that he applied his brakes as quickly as possible after seeing decedent upon the step of the car, and might have disbelieved that portion of his testimony wherein he says that the brakes did not take effect until after she was on the pavement. Conceding this, it still leaves the case barren of any evidence that they did so take effect. [8] The fact that a jury may disbelieve the testimony of a witness who testifies to the negative of an issue does not of itself furnish any evidence in support of the affirmative of that issue, and does not warrant a finding in the affirmative thereof unless there is other evidence in the case to support such affirmative. A finding that the decedent, while standing near the exit, was thrown from the

car by the sudden checking of the speed thereof would be not only wholly unsupported by any affirmative evidence, but would be contrary to the evidence of several witnesses, including those of the plaintiff, who testified that the decedent did not stop or pause or hesitate at the doorway, but that on the contrary, she walked right off the car.

[9] As to the fifth allegation, that the motorman negligently propelled the car past Q Street at a dangerous rate of speed, it was shown without conflict that the rate of speed was the usual and customary one for that vicinity. There is no evidence that it was either negligent or dangerous. If the car had slowed down as it approached this intersection this might have been construed as an invitation to decedent to alight, and if she had attempted to alight under such circumstances the operation of the car might have been regarded as a proximate cause of her injury, but no sequential relationship is here discernible between the speed of the car and the injury to decedent.

[10] The court instructed the jury: "If you believe that Katherine Marovich was killed while riding as a passenger on the street-car of the defendant by defendant's operation of any of its instrumentalities, then I instruct you that the defendant is called upon to show either that her death was occasioned by inevitable casualty which human foresight could not have prevented, or was due to contributory negligence on her part, and if you further believe that the defendant has not done this, your verdict should be for the plaintiff." This instruction should not have been given under the issues as framed. The general rule is that "where the plaintiff in his complaint gives the explanation of the cause of the accident, that is to say, where the plaintiff instead of relying upon a general allegation of negligence, sets out specifically the negligent acts or omissions complained of, the doctrine of *res ipsa loquitur* does not apply." (*Connor* v. *Atchison, T. & S. F. Ry. Co.*, 189 Cal. 1 [22 A. L. R. 1462, 207 Pac. 378], and cases cited.) The foregoing statement of the rule in the cited case was followed by the qualification that "where the explanation leaves it doubtful as to whether or not the ultimate cause of the injury is the negligence of the party charged, it is proper to instruct the jury as to the *res ipsa loquitur* doctrine." [11] Regardless of the effect of the foregoing qualification upon the

191 Cal.—20

general rule, it is clear that where the plaintiff in his complaint makes no general allegation of negligence, or no allegation of general negligence, instructions applying the doctrine of *res ipsa loquitur* should not be given. This must be so for the reason that in such case the plaintiff can recover only upon proof of one or more of the specific acts or omissions alleged in his complaint. (*Jahant* v. *Central Pac. R. R. Co.*, 74 Cal. 9 [15 Pac. 362]; *Verdelli* v. *Grays Harbor etc. Co.*, 115 Cal. 517, 528 [47 Pac. 364, 778]; *Rowe* v. *Such*, 134 Cal. 573, 576, 577 [66 Pac. 862, 67 Pac. 760]; *Cary* v. *Los Angeles Ry. Co.*, 157 Cal. 599, 603 [21 Ann. Cas. 1329, 27 L. R. A. (N. S.) 764, 108 Pac. 682]; *Roberts* v. *Sierra Ry. Co.*, 14 Cal. App. 180, 192 [111 Pac. 519, 527]; *Foley* v. *Northern California Power Co.*, 14 Cal. App. 401, 410 [112 Pac. 467]; *Johanson* v. *Brookings Commercial Co.* [*The Frank D. Stout*], 276 Fed. 382, 385.) It follows, therefore, that the defendant, in order to exculpate itself, is not required to do more than disprove the specific acts and omissions alleged. But the effect of the instruction as given was to cast upon the defendant the burden of exculpating itself not only from the negligent acts and omissions charged in the complaint, but also from all others conceivably applicable to the case, and told the jury, in effect, that if the defendant failed to do so, they should return a verdict for plaintiff, even though it were based upon some act or omission not alleged in the complaint.

As the judgment must be reversed for the reasons indicated, it is unnecessary to consider appellant's claim that the evidence is insufficient to support the implied finding that the decedent was free from contributory negligence.

Judgment reversed.

Lawlor, J., Lennon, J., Waste, J., Kerrigan, J., Seawell, J., and Wilbur, C. J., concurred.