[S. F. No. 10156. In Bank.—February 16, 1924.]

ALICE T. McKEON, Respondent, v. A. L. LISSNER et al. Appellants.

[1] ELEVATORS—ACT OF LEGISLATURE OF 1917 (STATS. 1917, P. 84)—PURPOSE OF ACT.—The act of the legislature of 1917 (Stats. 1917, p. 84), forbidding the operation of elevators without a license to be issued by the Industrial Accident Commission after inspection and approval of elevators by inspectors appointed by the commission, and requiring the owner or operator to comply with orders issued by the commission respecting repairs, alterations, etc., of the elevator, was intended merely for the purpose of providing additional safeguards in the type of elevators used and in the mechanism employed in their operation, and the periodical inspection of the same was provided for to the end that the public generally, as well as employees in the building where elevators are used, might have additional protection against injury or loss of life.

[2] ID.—ACT OF 1917—RESPONSIBILITY OF OWNER NOT DIMINISHED.—The measure of an elevator owner's care prescribed by the law and owing to persons lawfully using an elevator has not been diminished in the slightest degree by the act of 1917 (Stats. 1917, p. 84).

[3] NEGLIGENCE — FALL THROUGH AUTOMATIC ELEVATOR SHAFT — ORDERS AND RULES OF INDUSTRIAL ACCIDENT COMMISSION AFFECTING ELEVATORS — ADMISSIBILITY OF. — In an action for damages for personal injuries sustained by plaintiff in falling to the bottom of an automatic elevator shaft in an apartment house operated by the defendants, the facts as to the requirements of the orders and rules promulgated by the Industrial Accident Commission respecting the maintenance and operation of elevators similar to

3. Contributory negligence of one in stepping into elevator shaft, notes, Ann. Cas. 1914C, 578; 2 L. R. A. (N. S.) 757; 24 L. R. A. (N. S.) 246; L. R. A. 1915E, 731; L. R. A. 1917D, 892.

the one used in such apartment house, and as to the inspections made by that commission, were proper to be placed in evidence and to be considered by the jury in its determination of the question whether or not the defendants were negligent in the maintenance of the elevator under all the circumstances in evidence, which was, in the first instance at least, a question of fact for the jury.

[4] Id.—Pleading—Issues.—In such an action, where the complaint contained no allegation of negligence other than that which had to do with and was expressly limited to the failure of defendants "to keep said elevator and said apparatus for operating the same in order and repair," the plaintiff could recover only upon proof of one or more of the acts or omissions alleged in the complaint.

[5] Id. — Contributory Negligence — Evidence.—In such an action, contributory negligence on the part of plaintiff cannot be said to appear conclusively as a matter of law from the evidence.

[6] Id.—Instruction—Construction.—In such an action, an instruction that the defendants in operating the automatic elevator "were not excused from liability for injuries due to an inherent structural defect in the appliance, or from some lack of repair, on the theory that the elevator installed was as perfect an elevator as could be constructed under the then condition of electrical knowledge and science, as the law does not contemplate that such appliances may be used to the peril of the life or limb of those who may be invited to employ them, at least without adequate warning and protection against the perils attending such employment," is open to the criticism that it is argumentative, invades the province of the jury, in that it assumes that there was in the case either an inherent structural defect or some lack of repair, and misstates the law in that it tells the jury, in effect, that defendants would be liable for injuries due to an inherent structural defect or to lack of repair, regardless of whether defendants were or were not negligent with respect thereto.

[7] Id.—Instruction.—Such an instruction is further erroneous in that it invites the jury to predicate a finding of negligence upon the failure of the defendants to give "adequate warning and protection against the perils attending such employment," which finding, if made, would be entirely outside of the issues in the action.

[8] Id.—Assumption of Defect in Elevator—Erroneous Instruction.—In such an action, an instruction given to the jury which virtually assumed that the existence of a defect in the elevator or its appliances would be conclusive proof of negligence on the part of the defendants was erroneous.

[9] ID.—PLEADING—ISSUES—RES IPSA LOQUITUR—INSTRUCTIONS.—In such an action, where the complaint contained no allegation of negligence other than that which had to do with and limited to the failure of defendants "to keep said elevator and said apparatus for operating the same in order and repair," and there was not the slightest hint or suggestion in the complaint of a claim that the defendants were negligent in omitting to have the hallway leading to the elevator properly lighted, instructions embodying the *res ipsa loquitur* doctrine which had the effect of telling the jury that if they should find that the defendants were negligent in the matter of lighting the hallway they should return a verdict for plaintiff, should not have been given, because they authorized the jury to base a verdict upon a theory of negligence which was entirely foreign to the issues in the case.

[10] ID.—PLEADING—NOTICE.—If the plaintiff in such action desired to rely upon the additional claim of negligence in the matter of lighting the hallway leading to the elevator, she should have notified the defendants thereof by pleading it in her complaint.

[11] ID.—PLEADING — GENERAL ALLEGATION OF NEGLIGENCE — SUFFICIENCY OF.—It is sufficient to charge negligence in general terms, and when that which is done is stated, it is sufficient to say that it was negligently done without stating the particular omission which rendered the act negligent.

[12] ID.—PLEADING—SCOPE OF ALLEGATIONS—ISSUES.—In such action, where, by ignoring the specification of particulars in the complaint wherein the defendants were said to be negligent, the general allegation of negligence in failing and neglecting to keep the elevator and the apparatus for operating the same in repair was left, the plaintiff could not recover upon proof of some negligence which was wholly disconnected with the keeping in repair of the elevator and its apparatus, such as, for example, the insufficient lighting of the hallway leading to the elevator.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Pat R. Parker, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Redman & Alexander for Appellants.

Ford & Johnson for Respondent.

9. Application of doctrine of *res ipsa loquitur*, notes, 113 Am. St. Rep. 1030; 8 Ann. Cas. 976; 2 L. R. A. (N. S.) 748; 13 L. R. A. (N. S.) 619; 29 L. R. A. (N. S.) 816; L. R. A. 1915E, 794; L. R. A. 1916C, 378.

MYERS, J.—Defendants appeal herein from a judgment on verdict in favor of the plaintiff in an action to recover damages for personal injuries sustained by the plaintiff in falling to the bottom of an elevator shaft in an apartment house operated by the defendants. We adopt the following portion of the opinion of the district court of appeal herein, which was prepared by Mr. Justice St. Sure:

"Plaintiff, looking for an apartment, visited a certain apartment house of which defendants were lessees. Being admitted to the building, she approached an automatic elevator maintained in the premises for the use of tenants and others. The door of the elevator cage was open and plaintiff, believing that she saw the cage in its proper place, stepped through the doorway and fell to the bottom of the shaft, a distance of about fourteen feet. She received injuries for which a jury awarded her damages in the sum of four thousand dollars. Defendants appeal from the judgment.

"The automatic elevator was of a type now generally in use in apartment houses. There was a grill door in the elevator itself, and on each landing there was another door of wired glass opposite the elevator entrance. So-called 'safety' locks were installed on each floor, which permitted any one of said last mentioned doors to be opened when the elevator was at that floor. The elevator could be brought to any floor by pressing a button located at such floor. Buttons were installed in the elevator cage with numerals on them corresponding to the floors in the building, and a passenger in the elevator would be carried to any particular floor by pressing the corresponding button in the elevator. It was necessary that both the door on the shaft and the elevator door be closed before the cage could be moved, and it was impossible to open the shaft door at any floor except the one at which the elevator was standing if the mechanism was in order. If parts of the mechanism were out of order the shaft door might be opened without the elevator being at the same level, sometimes at once and easily and again with difficulty and after trials lasting from half an hour to an hour. In addition to the inspection of the elevator by the Industrial Accident Commission (provided for by an act of the legislature approved April 6, 1917; Stats. of that year, page 84), defendants had a weekly inspection made by a

private company, part of which inspection consisted in testing the doors. The testing of the shaft door, according to an inspector of the company, consisted in dropping the cage about three feet below each floor and trying the shaft door three or four times to see if it would open. Such an inspection had been made two days before the accident and no defects noted. Immediately after the accident the lock was removed from the door and it was found that a spring inside had broken, probably through crystallization of the tempered steel of which it was made. This was a gradual process and not discoverable by the tests made by the inspector, nor except by removing the lock itself.

"The evidence shows that plaintiff had made two visits to the apartment house on the day she was injured. The first visit was at about two o'clock and the second at about five o'clock in the afternoon. She readily used the elevator on the occasion of her first visit. On her second visit she approached the elevator and thought she saw the cage door open. 'When I got back to the place where the elevator was located I turned,' she testified. 'I found the door open and then, of course, I am accustomed to automatic elevators, having lived in places nearly two years where I operated one several times a day; so, of course, an open door said to me that the cage of the elevator was there, but I stood there just a moment; I was only there a moment looking and I thought I saw this cage and I looked straight ahead of me and I thought I saw the elevator and I looked down and I thought I saw the elevator floor so, of course, I stepped in and fell down. The elevator wasn't there. There was no light in the hallway at the time that I went in there the second time. It was as dark as could be and that is the reason I stopped and looked for the floor of the elevator. It appeared to me at five o'clock that it was a little bit darker than when I was there at two o'clock. My recollection is that it was a bright day. I was thoroughly acquainted at that time with automatic elevators. In my experience with automatic elevators I have seen an automatic elevator with the door ajar and the cage there. I have seen this on more than one occasion. I lived in an apartment house before that for a long time. I have lived on the top floor in an apartment house and very often I had to walk downstairs when I was in a hurry, simply because when I

pressed the button the elevator did not come up to me because the door down on the third floor had been partially open. I know positively that you cannot move the elevator if the door is the least bit open. You can't open the door unless the cage is at the floor. I found the door ajar and the cage appeared to be at the floor. I looked and thought I could discern this black cage. You can see the floor and it is rather black and I saw what I thought to be the black floor of the cage, and of course I thought the elevator was there. I stepped in and I remember myself falling. I knew I was falling. The next I remember was being down at the bottom of the pit.'

"After viewing the premises during the trial plaintiff testified that she was impressed 'that something had been done to brighten the light up greatly; it seemed very much brighter. The sun was shining right through the transom above the two doors. The light yesterday appeared much better than on the day I was there. There was plently of light there. . . . ' A police officer who appeared at the scene of the accident and assisted in removing plaintiff from the pit of the elevator shaft, testified, 'when I went back to the elevator that hall around the elevator was to me rather dark.' The defendants testified that a light was always maintained in the elevator cage, and their manager and one of the tenants testified that the light was lit at two o'clock on the day of the accident, and also at the time the accident occurred. An elevator inspector testified that upon the occasion of his visit the light in the elevator cage was always burning; that 'if the light was out you never could see the punch buttons.'

"Defendants' points on appeal are, first, that there was no evidence of negligence whatever; second, that plaintiff was guilty of contributory negligence; third, errors in the instructions of the court; and fourth, errors of the court in refusing to give instructions requested by defendants.

"In their argument, given in support of the first point, counsel for defendants call our attention to the fact that the legislature in 1917 (Stats. of that year, page 84), passed an act forbidding the operation of elevators without a license to be issued by the Industrial Accident Commission after inspection and approval of elevators by inspectors appointed by it, the inspection fees to be paid by the ele-

vator owner or operator, and by the terms of the act the owner or operator is obliged to comply with orders issued by the commission respecting repairs, alterations, etc., of the elevator. Counsel earnestly contend that 'since the passage of this act owners and operators of elevators have ceased to be free agents'; that 'the statute of 1917 revolutionized the law relating to the responsibility of owners and operators of elevators'; that 'a new system was put in operation by that act and the old system of freedom of action, coupled with responsibility was abolished'; that 'the theory underlying the act in question is that these matters cannot safely be trusted to the control of private enterprise but should be taken in hand by public authority.'

"With this contention we are unable to agree. An examination of the statute discloses, as expressed in the first clause of its title, that it is 'an act for the periodical inspection of elevators operated in places of employment in this state,' etc. Sections 1 and 2 of the act seem designed to protect employees in the place where the elevator is maintained, and it may be, as suggested by counsel for plaintiff, that the act has no application to the maintenance of the elevator involved herein. However, we are not called upon to decide such a question in this case.

[1] "We cannot conceive that it was the intention and purpose of the legislature, in the passage of said act, to 'revolutionize' the law relating to the responsibility of owners and operators of elevators. We think that the act was intended merely for the purpose of providing additional safeguards in the type of elevators used and in the mechanism employed in their operation; and that the periodical inspection of the same was provided for to the end that the public generally, as well as employees in the building where elevators are used, might have additional protection against injury or loss of life. The legislation was probably inspired through an enlightened appreciation of the value of human life, rather than for the purpose of relieving the owners and operators of all responsibility. [2] In our opinion the measure of the owner's care prescribed by the law and owing to persons lawfully using an elevator, has not been diminished in the slightest degree by said act of 1917."

[3] To the foregoing it should be added that the facts as to the requirements of the orders and rules promulgated by the Industrial Accident Commission respecting the maintenance and operation of elevators similar to the one here in question, and as to the inspections made by that commission were proper to be placed in evidence and to be considered by the jury in its determination of the question whether or not the defendants were negligent in the maintenance of the elevator under all the circumstances in evidence, which was, in the first instance at least, a question of fact for the jury.

In answer to appellants' contention that the evidence was insufficient to support the implied finding of negligence of defendants, respondent replies that negligence was proven in at least two particulars, (1) "the maintaining of the dark and confusing hallway leading to the elevator," and (2) "in operating the elevator with a broken spring, when no inspection had been made adequate to disclose the defective appliance." It is to be noted that the first specification of negligence above is entirely outside the issues made by the allegations of the complaint and answer herein. [4] The complaint contains no allegation of negligence other than that which had to do with and was expressly limited to the failure of defendants "to keep said elevator and said apparatus for operating the same in order and repair." In such case the plaintiff can recover only upon proof of one or more of the acts or omissions alleged in the complaint. (*Marovich* v. *Central California Traction Co.,* 191 Cal. 295 [216 Pac. 595], and cases cited.) Inasmuch as this case must be reversed because of errors in the instructions, to be hereinafter noted, and as the evidence may not be the same upon a second trial thereof, we do not deem it necessary to here pass upon the question of the sufficiency of the evidence to sustain the allegations contained in the complaint.

[5] In response to appellants' contention that respondent was guilty of contributory negligence, it is sufficient to say that such negligence cannot be said to appear conclusively as a matter of law from the evidence herein. (*Jacobi* v. *Builders Realty Co.,* 174 Cal. 708, 711 [L. R. A. 1917E, 696, 164 Pac. 394]; *Muller* v. *Hale,* 138 Cal. 163, 167 [71 Pac. 81].)

[6]  The court, at the request of plaintiff, gave the following instruction to the jury:

"You are instructed that the defendants in operating the automatic elevator therein for the carriage of tenants and their guests and persons who visited the place on business were not excused from liability for injuries due to an inherent structural defect in the appliance, or from some lack of repair, on the theory that the elevator installed was as perfect an elevator as could be constructed under the then condition of electrical knowledge and science, as the law does not contemplate that such appliances may be used to the peril of the life or limb of those who may be invited to employ them, at least without adequate warning and protection against the perils attending such employment."

This presents an excellent illustration of the danger inhering in the practice of copying language used in an opinion of a reviewing court and embodying the same in an instruction to be given to the jury. The above instruction consists in part of a garbled quotation from the opinion of this court in the Jacobi case, *supra*, at page 710. The passage from which the quotation was taken reads as follows: "*If* the apparatus though it be the last achievement of mechanical and scientific skill, *is not a suitable appliance* to be used in the transportation of passengers to employ it for that purpose is negligence. The law does not contemplate that such appliances, in the experimental stage of their development, may be used to the peril of the life and limb of those who may be invited to employ them, at least without adequate warning and protection against the perils attending such employment." (Italics added.) By lifting the second sentence thereof out of the context by which it was limited and qualified, it was given an apparent meaning entirely different from that which it was used to convey. The language quoted, as used in the opinion, was expressly applied to apparatus which was in the experimental stage of development, and which, "though it be the last achievement of mechanical and scientific skill, *is not a suitable appliance* to be used in the transportation of passengers." The quoted language was used *arguendo* in the discussion of a case wherein it had been proved, without conflict, that the apparatus in question was not only seriously defective, but was actually known by the defendant

to be so defective prior to the time of the injury. Embodied in an instruction to the jury, under the issues and evidence as presented in the instant case, it is open to the criticism that it is argumentative, invades the province of the jury to determine the facts, and misstates the law applicable thereto. It is not only argumentative, but is arguing against a contention made in the Jacobi case which has not been made at any time in the case at bar, so far as the record discloses. It invades the province of the jury, in that it assumes that there was in the case at bar either an inherent structural defect or some lack of repair, whereas both of these were questions of fact for the jury's determination. It misstates the law in that it tells the jury, in effect, that defendants would be liable for injuries due to an inherent structural defect or to lack of repair, regardless of whether defendants were or were not negligent with respect thereto. [7] It is further erroneous in its application to the instant case in that it invites the jury to predicate a finding of negligence upon the failure of the defendants to give "adequate warning and protection against the perils attending such employment," which finding, if made, would be entirely outside of the issues herein.

[8] The court also instructed the jury as follows:

"You are instructed that even though you may find from the evidence that prior to the accident defendants had employed an inspector to inspect its elevator, as well as the doors and other appliances in use in connection therewith, and that an inspection failed to disclose any defect in the elevator or the doors or the other appliances used in connection therewith, and that they were apparently in a reasonably safe condition; but, if you find that the accident occurred by reason of a defect or a failure to keep the appliances in repair, the mere fact of the employment of an inspector will not relieve defendants from the consequences of their negligence."

This instruction was erroneous in that it virtually assumed that the existence of a defect in the elevator or its appliances would be conclusive proof of negligence. It said to the jury in effect: "If you find that such defect existed you must find that the defendants were negligent, and the fact that they employed an inspector will not relieve them from the consequences of their negligence." Thus the in-

struction assumed the existence of the very fact which was in issue in the case, and upon which the plaintiff's right to recover depended, namely, the negligence of the defendants. It is, of course, true that if the defendants were negligent in the matter of the maintenance of the elevator, the mere fact that they employed an inspector and that he made inspections would not relieve them from the consequences of such negligence. But the defendants were not insurers and were not liable herein unless they were negligent, and the question whether they were or were not negligent was an ultimate question of fact which was to be determined by the jury upon a consideration of all of the probative facts in evidence. The mere proof of a defect in the elevator, whether latent or patent, was not proof of the ultimate fact of negligence, because it was not necessarily inconsistent with the exercise of due care by the defendants. It was a probative fact which merely *tended* to prove the ultimate fact of negligence. Likewise, the mere proof that defendants employed an inspector who made periodic inspection was not proof of the ultimate fact that defendants exercised due care, because it was not necessarily inconsistent with negligence on their part. It was a probative fact which merely *tended* to prove the ultimate fact of the exercise of due care. It would, therefore, have been entirely proper for the court to instruct the jury: "If you find that the accident occurred by reason of a defect or a failure to keep the appliances in repair, *and if you find that the defendants were negligent in failing to discover or in failing to remedy such defect or disrepair,* the mere fact of the employment of an inspector will not relieve defendants from the consequences of their negligence." This was doubtless the rule of law which the learned trial judge had in mind, and, in substance, the instruction which he intended to give. But the omission therefrom of the qualifying phrase above italicized gave to it the effect of withdrawing from the consideration of the jury a material question of fact which it was the sole province of the jury to determine. The questions whether the existence of the defect was due to defendant's negligence, and whether their failure to repair it was a *negligent* failure, were questions for the jury, which the court had no right to determine.

The trial court also gave to the jury six different instructions, each of which embodied a statement of the rule of *res ipsa loquitur,* and instructed the jury to apply the same in its consideration of the issues. Appellants do not contend that any of these instructions embodied an incorrect statement of the rule itself, but do contend that the rule itself is wholly inapplicable to the situation here under consideration, because of the circumstances that the elevator in question was not being operated by the defendants or their servant at the time of the injury, and that the plaintiff was not injured as the result of any movement or operation of the elevator, but rather as the result of her own act in stepping into the open elevator shaft. In this connection it is sufficient to advert to the fact already mentioned, that the complaint herein contains no allegation of negligence other than that which had to do with and was limited to the failure of defendants "to keep said elevator and said apparatus for operating the same in order and repair." There was not the slightest hint or suggestion in the complaint of a claim that the defendants were negligent in omitting to have the hallway leading to the elevator properly lighted. Evidence to the effect that the hallway was dark was admitted in behalf of the plaintiff at the trial. It was properly admitted because it was one of the circumstances immediately surrounding the happening of the accident— the *res gestae*—and also because it was relevant to the issue of contributory negligence. **[9]** Under these circumstances instructions embodying the *res ipsa loquitur* doctrine should not have been given, because they authorized the jury to base a verdict upon a theory of negligence which was entirely foreign to the issues in the case. We so held, in effect, in *Marovich* v. *Central California Traction Co., supra.* The point there decided was not precisely identical with the one here presented, but the *rationale* of the rule there applied applies with equal force to the present situation. The defendans were brought into court upon notice that they were charged with negligence in respect of the repair of the elevator, and in no other respect whatever. They were never notified that any other or different claim would be made against them. Under these circumstances, to tell the jurors, after the close of the trial, that if they should find that the defendants were negligent in the matter of lighting the hall-

way they should return a verdict for plaintiff, would be to authorize a verdict against the defendants upon a claim against which they had never been called upon to defend themselves. This, in effect, is what was done by the giving of the *res ipsa loquitur* instructions. [10] If plaintiff desired to rely upon this additional claim of negligence, she should have notified the defendants thereof by pleading it in her complaint. (*Cary* v. *Los Angeles Ry. Co.,* 157 Cal. 599, 603 [21 Ann. Cas. 1329, 27 L. R. A. (N. S.) 764, 108 Pac. 682].)

The allegations of the complaint herein were as follows:

"At all of the times herein mentioned defendants carelessly and negligently failed and neglected to keep said elevator and said apparatus for operating the same in repair, and said elevator and said apparatus for operating the same were at all of said times, because of said carelessness and negligence of said defendants, out of repair and failed to operate in this: That the apparatus for operating said elevator provided by defendants to be used by passengers in bringing said elevator from one floor to another and to open the doors in the shaft, as aforesaid, caused said doors to open when the elevator car was not at the place in said shaft opposite the floor where the elevator was sought to be used."

The allegations in the first portion of the foregoing quotation were obviously particularized and limited by the specifications in the latter portion thereof, but if we assume that they were not so limited, and for the moment wholly ignore the particular specifications, we have left a general allegation of negligence in failing and neglecting to keep said elevator and the apparatus for operating the same in repair. [11] "It is well settled that it is sufficient to charge negligence in general terms, and that when that which is done is stated, it is sufficient to say that it was negligently done without stating the particular omission which rendered the act negligent." (*Sharpless* v. *Pantages,* 178 Cal. 122 [172 Pac. 384].) That is precisely what the plaintiff did in this case, if we ignore the specification of particulars above quoted. It obviously follows that in order to recover she was required to prove some negligent act or omission on the part of the defendants in doing that which was alleged to have been negligently done by

them, to wit, in keeping the elevator and its apparatus in repair. [12] Under these circumstances she could not recover upon proof of some negligence which was wholly disconnected with the keeping in repair of the elevator and its apparatus, such as, for example, the insufficient lighting of the hallway leading to the elevator. (*Cary* v. *Los Angeles Ry. Co.*, 157 Cal. 599, 603 [21 Ann. Cas. 1239, 27 L. R. A. (N. S.) 764, 108 Pac. 682]; *Marovich* v. *Central California Traction Co., supra*].)  But this is precisely what the plaintiff has sought to do and what the given instructions upon the *res ipsa loquitur* doctrine have enabled her to do.  The jury was told that "Plaintiff is not required to show particularly what the specific act of negligence was which produced the accident, but is only required to show that the accident is one which would not ordinarily occur had due care been employed," and "that the happening of the accident, if any, affords reasonable evidence, in the absence of explanation by the defendants, that the accident, if any, was the result of a want of proper care on the part of the defendants."  The jurors were thus invited to predicate a verdict against the defendants upon any theory of negligence which might find support in the evidence, regardless of whether or not it was within the issues.  Plaintiff is now contending that the verdict is sufficiently supported by evidence that the hallway leading to the elevator was insufficiently lighted, and this may well have been the theory of the jurors upon which their verdict was based.  But this is entirely unconnected with the claimed failure to keep the elevator in repair, and is, therefore, wholly outside of the issues herein.

Appellants complain of the refusal of the trial court to give to the jury twelve different instructions which were requested by them.  In this connection they content themselves with the general assertion that "These instructions we submit expressed the law correctly and were relevant and pertinent, nor did the court give equivalent instructions."  From some examination of the record we find the equivalent of several of the refused instructions in the instructions given.  We cannot be expected to search the entire record with respect to each of the twelve refused instructions for the purpose of ascertaining whether or not

the substance thereof has been embodied in the instructions given.

No question is made upon this appeal as to the degree of care incumbent upon the appellants in the maintenance of the elevator. Respondent asserts and appellants concede that they were held "to the utmost care and diligence of very cautious persons and responsible for the slightest neglect."

We are satisfied that the error in giving the instructions which are above quoted was of so serious a character as to produce a miscarriage of justice, and the judgment is therefore reversed.

Waste, J., Seawell, J., and Wilbur, C. J., concurred.

Rehearing denied.

Richards, J., did not participate.