[Civ. No. 5170.   Third Appellate District.—July 22, 1935.]

MacDOUGALL ARMSTRONG et al., Respondents, v. CARL
T. WALLACE et al., Appellants.

Nelson & Ricks for Appellant Wallace.

W. I. Gilbert, Sutherland, Dearing & Jertberg, Adam Thompson, Renwick Thompson, Schauer, Ryon & McMahon, Head, Wellington & Jacobs and Hadsell, Sweet, Ingalls & Lamb, as *Amici Curiae* on Behalf of Appellant Wallace.

Horace W. B. Smith, George A. Work and Irwin T. Quinn for Appellant Hospital Corporation.

M. H. Iverson, John L. McNab, Frank M. Thompson and Robert Littler for Respondents.

PULLEN, P. J.—This action was brought by plaintiffs, husband and wife, against Carl T. Wallace, a physician and surgeon, and Sisters of St. Joseph of Orange, a corporation, operating a hospital, for injuries alleged to have been sustained by Maxine Armstrong as the result of the alleged negligence of Dr. Wallace and Sisters of St. Joseph of Orange, a corporation, in the failure to remove a laparotomy sponge from the abdominal cavity of Mrs. Armstrong, upon the completion of a Caesarean operation.

After a trial before a jury, a verdict was returned in favor of both defendants and against plaintiffs. Plaintiffs moved for a new trial, which was granted as to defendant Wallace on the ground of errors of law occurring at the trial, and as to defendants Sisters of St. Joseph of Orange on the ground of errors of law, and that the evidence was insufficient to justify the verdict and was against the weight of the evidence. From this order granting a new trial both defendants appeal and the matter is now before us for consideration and determination upon those issues.

Let us first consider the appeal of the hospital; the record discloses the plaintiff Maxine Armstrong was under the care of Dr. Wallace and was sent by him to the hospital of her choice for an operation. The hospital was owned, operated and conducted by defendant Sisters of St. Joseph of Orange, a corporation. The purposes for which the corporation was formed were and are, among others, for social, charitable, educational and religious purposes and "to acquire and maintain suitable and permanent convents . . . orphanages, hospitals and other charitable institutions . . . , to purchase, take, hold, lease, hire and own lands . . . , educational institutions, orphanages and hospitals . . . "

No one in connection with the corporation received any salary or profits, nor did the officers of the corporation receive any salary nor participate in any of the profits. The hospital was acquired by Sisters of St. Joseph of Orange by gift from two of their sisterhood who had themselves received the property by inheritance. In order to repair and modernize the building. a public drive for funds was made among the citizens

of Eureka. The order from time to time received bequests which were used in meeting the expenses of maintaining the hospital and a nurses' training course and carrying on educational work in Eureka. Those patients who were able to pay for their hospitalization were charged therefor, but others were admitted as charity patients without pay. There were at the times here in question from twenty-three to twenty-five sisters working at the hospital who received no salary but were furnished their room and incidentals. They performed most of the work about the hospital and did most of the nursing. If there was anything left after the operation of the hospital it went toward the upkeep of the institution locally and then for the benefit of the order at large. The order also maintained a training school for young women who were educated as teachers and nurses, who upon graduation, were sent to other communities to carry on their work.

It is the contention of appellant Sisters of St. Joseph of Orange that it is a charitable institution and is therefore exempt from liability for the negligence of its employees.

To determine whether or not a private hospital conducted by a corporation or society is charitable, it is necessary to look not only to the articles of incorporation and by-laws, but also to the method of conducting the hospital. (*Estate of Dol,* 182 Cal. 159 [187 Pac. 428]; *Stewart* v. *California Med. etc. Assn.,* 178 Cal. 418 [176 Pac. 46].) We are convinced after an examination of the undisputed evidence before us, both documentary and oral, that appellant hospital was a charitable agency. (*Burdell* v. *St. Luke's Hospital,* 37 Cal. App. 310 [173 Pac. 1008]; *Dingwell* v. *Seymour,* 91 Cal. App. 483 [267 Pac. 327]; *Stonaker* v. *Big Sisters Hospital,* 116 Cal. App. 375 [2 Pac. (2d) 520]; *Ritchie* v. *Long Beach Community Hospital Assn.,* 139 Cal. App. 688 [34 Pac. (2d) 771].)

As was said in the case of *Stonaker* v. *Big Sisters Hospital, supra,* where the action was brought against the surgeon, two nurses and the hospital, for injuries alleged to have been sustained by the administration of an excessive amount of ether:

"It appears without contradiction that the hospital paid no compensation to its constituents for services, and that it paid no dividends; that it was conducted for the good of the community, by a charitable organization known as the Big

Sisters League, with the intent and purpose that if there was a surplus over and above the expense of carrying it, such surplus would go to said league. There is no evidence of a relaxation of reasonable diligence in the selection of attendants. As we have observed, the respondent physician employed by defendant was not employed by the corporation, and was not charged with supervision of its mechanical apparatus. We think the case is governed by rules announced in *Burdell* v. *St. Luke's Hospital,* 37 Cal. App. 310 [173 Pac. 1008], that 'Upon this showing the court was clearly correct in directing a verdict for defendant, under the rule laid down in *Thomas* v. *German Gen. Benevolent Soc.,* 168 Cal. 183 [141 Pac. 1186], where it is said "where one accepts the benefit of a public or private charity he exempts by implied contract the benefactor from liability for the negligence of the servants in administering the charity, if the benefactor has used due care in the selection of those servants".' The fact that plaintiff paid the regular rates charged by the hospital does not take the case out of the operation of this rule, for it is apparent that the rates were not charged with a view of making a profit from her, and the moneys received from paying patients were not in fact sufficient to meet even the ordinary operating expenses of the hospital, without considering any interest upon the amount invested in the building.''

So the fact that Mrs. Armstrong paid the regular rates charged by the hospital for paying patients did not take it out of the class of charitable institutions, as the amount paid was not received to build up a profit but to assist in the carrying on of the general charitable purposes of the order. Nor is there anything in the evidence to show that the corporation failed to use due care in the selection of its nurses; in fact, it is admitted that the nurses were entirely competent and able. No right of action appearing to exist against the hospital, as to it, the order granting the new trial is reversed.

Let us now consider the appeal of the defendant Wallace:

The doctor, at the request of the plaintiffs, performed a Caesarean operation and was assisted in the operation by the regularly employed nurses of the hospital, whose duties at the time of the performance of the operation, were to have charge of the operating room, and were then and there under

the direction and control of, and obeyed the orders of Dr. Wallace.

In the course of the operation it became necessary to use many laparotomy tapes or surgical sponges. These sponges, or tapes, as they were also called, were of various sizes, some as large as fourteen inches square, made of a double thickness of cotton gauze. To each sponge was attached a narrow strip of flat cloth approximately ten or twelve inches in length, also called a tape. This tape is attached to the sponge or pad in order that a ring or other object could be attached and left outside the surgical cavity, to prevent the sponge being lost or overlooked.

The doctor described the operation, which occupied approximately an hour to perform, in considerable detail. During the operation the patient lost a large amount of blood and it was necessary to operate very rapidly. Neither the nurses nor the doctor made any count of the sponges after the operation, and no such count was requested of the nurses by the doctor.

A day or two after the operation the patient began to show signs of infection, which increased decidedly as time went on. Defendant continued to treat plaintiff for approximately five weeks when Dr. Falk was called in the case. Shortly after accepting the case he operated, removing from the abdominal cavity of plaintiff a laparotomy sponge about fourteen inches square. One of the nurses who assisted at the second operation testified there was a strip of tape attached to the sponge but no ring or hemostat.

The order granting the new trial, being heard upon errors of law occurring at the trial, we need only to examine the rulings of the court upon the admission and rejection of evidence and the instructions given and refused by the court. The rulings during the progress of the trial have been gathered by counsel for appellant Wallace in their brief, and after an examination thereof we find no errors therein. The trial court adopted the theory of defendant, which was reflected in the instructions to the jury, that the surgeon was not responsible for the negligence of the nurses in the operating room; that it was not negligence on the part of the surgeon to fail to direct the nurse to make a count of the sponges used in the operation nor to fail to make a thorough search for all sponges himself; that the rule of *res ipsa loquitur* did not

apply, and that what constituted correct practice among physicians and surgeons in that particular community could be established only by expert witnesses.

██ Inasmuch as on an appeal from an order granting in general terms a motion for a new trial the presumption is in favor of the order and against the verdict, and the order will be affirmed if it may be sustained on any ground (*Weaver* v. *Shell Oil Co.*, 129 Cal. App. 232 [18 Pac. (2d) 736]), it will not be necessary to pass upon all of the alleged errors pointed out by plaintiff. ██ The point to which counsel devoted the major portion of their argument has to do with the application of the rule of *res ipsa loquitur*. The court refused an instruction submitted by plaintiff as follows:

"I charge you that where a thing is shown to be under the management of the defendant, or his servants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of proper care."

The use of the words "proper care" instead of "ordinary care" contained in the instruction is criticised, and the case of *Hesler* v. *California Hospital Co.*, 178 Cal. 764 [174 Pac. 654], cited in support thereof. However, the recent case of *Timbrell* v. *Suburban Hospital et al.*, 4 Cal. (2d) 68 [47 Pac. (2d) 737], upholds an instruction requiring "due and proper care". There, also, as in the Timbrell case, *supra,* the court correctly and at length advised the jury the plaintiffs must prove their case by a preponderance of the evidence. This objection is further answered also by the Supreme Court in the case of *Michener* v. *Hutton,* 203 Cal. 604 [265 Pac. 238, 59 A. L. R. 480], where an instruction containing similar language was approved, and cited many cases in support thereof. The objection of appellant here, however, is not so much as to the form of the instruction as to the applicability of the doctrine of *res ipsa loquitur*.

Appellant first objected to the rule being applied here because it is claimed the pleading of the alleged negligence was not in general·terms and that specific acts were set forth upon which the pleader based his allegations of negligence. In *Lippert* v. *Pacific·Sugar Corp.*, 33 Cal. App. 198 [164 Pac. 810], the court there quotes with approval from *Cassady* v. *Old*

*Colony Street Ry. Co.*, 184 Mass. 156 [68 N. E. 10, 63 L. R. A. 285], where it is said: "The defendant also contends that even if originally the doctrine would have been applicable, the plaintiff had lost or waived her rights under that doctrine (*res ipsa loquitur*), because, instead of resting her case solely upon it, she undertook to go further, and show particularly the cause of the accident. This position is not tenable. It is true that, where the evidence shows the precise cause of the accident, as in *Winship* v. *New York, N. H. & H. R. Co.*, 170 Mass. 464 [49 N. E. 647], and similar cases, there is, of course, no room for the application of the doctrine of presumption. The real cause being shown, there is no occasion to inquire as to what the presumption would have been as to it if it had not been shown. But if, at the close of the evidence, the cause does not clearly appear, or if there is a dispute as to what it is, then it is open to the plaintiff to argue upon the whole evidence, and the jury are justified in relying upon presumptions, unless they are satisfied that the cause has been shown to be inconsistsent with it. An unsuccessful attempt to prove by direct evidence the precise cause does not estop the plaintiff from relying upon the presumptions applicable to it."

· In *Atkinson* v. *United Railroads*, 71 Cal. App. 82 [234 Pac. 863], after a study of the rule in various states it was found that in some the rule is absolute that where specific acts of negligence are pleaded, the right to rely upon the presumption resulting from the doctrine of *res ipsa loquitur* is totally lost. In other states the rule has been adopted that plaintiff is not deprived of the benefit of such doctrine merely because he has made allegations of specific omissions of duty; and in other jurisdictions, and the court places California among them, a qualified rule has been adopted to the effect "that where plaintiff makes specific allegations of negligence he must rely for his recovery upon, and he is limited to such specific acts of negligence and cannot recover for any other negligent act but he is not deprived of the benefit of the doctrine of *res ipsa loquitur* so far as those specific acts of negligence are concerned. In other words, it is held in substance that the allegations of specific acts of negligence, while not depriving plaintiff of the benefit of said doctrine, relieve the carrier from the burden of disproving or meeting any other negligent acts than those alleged for the reason that

having specified the acts of negligence, plaintiff will be confined to them and not allowed to prove or to recover upon other causes than those alleged.'' Citing cases from other states and quoting from Thompson on Evidence, volume 6, section 7643, and as a basis for such a conclusion the court found support in the following California cases: *Conner* v. *Atchison, etc.,* 189 Cal. 1 [207 Pac. 378, 26 A. L. R. 1462]; *Marovich* v. *Central California Traction Co.,* 191 Cal. 295 [216 Pac. 595]; *McKeon* v. *Lissner,* 193 Cal. 297 [223 Pac. 965]; *Soto* v. *Spring Valley Water Co.,* 39 Cal. App. 187 [178 Pac. 305]; *Strock* v. *Pickwick Stages System,* 107 Cal. App. 298 [290 Pac. 482].

The negligence charged in the complaint against Dr. Wallace is in the following language:

''That the defendant Carl T. Wallace then and there and during the said operation, negligently and carelessly deposited and left an abdominal sponge or gauze pad within the abdomen of said Maxine Armstrong. That the said Carl T. Wallace negligently and carelessly closed said incision and sutured the same without first removing said abdominal sponge or gauze pad which he had theretofore deposited and left within the abdomen of said plaintiff Maxine Armstrong.''

We are also of the opinion these allegations did not in effect allege specific acts of negligence, but at most merely charge that appellant negligently left a sponge in the abdomen of plaintiff. No attempt was made to describe the negligence in detail nor charge why or under what circumstances it occurred. Such an allegation is analogous to a complaint of an injury by a guest in an automobile who alleges that the operator so negligently and carelessly drove and operated the car as to strike an obstruction, causing the injury complained of, or of a brick falling from a building upon a passerby below, inflicting damage.

We are of the opinion, therefore, that the form of the complaint is not such as to prevent the application of the doctrine.

The second objection urged by plaintiff to the applicability of *res ipsa loquitur* is that the rule does not apply because there are two defendants here involved. In *St. Clair* v. *McAlister,* 216 Cal. 95 [13 Pac. (2d) 924], a passenger injured by a collision between two automobiles was given the benefit of the doctrine as against the driver of the one in

which he rode and the employer, and not against the other driver. To the same effect is the recent case of *Godfrey* v. *Brown,* decided by the Supreme Court upon hearing, in 220 Cal. 57 [29 Pac. (2d) 165, 93 A. L. R. 1092], where many authorities are cited and analyzed supporting the rule that the fact there are two defendants does not preclude the application of the doctrine in question.

█ In the instant case Maxine Armstrong was, during the operation, under an anaesthetic; Dr. Wallace was in charge; the sponge was not discovered until some five weeks thereafter; as to why it was left there or how it happened to be left, she has no information or means of information; such facts were peculiarly within the knowledge of her physician.

We are of the opinion, therefore, that the court erred in refusing to give the instruction heretofore quoted.

Whether or not the surgeon was responsible for the acts of the nurse is not necessary here to consider, but it does appear that a definite responsibility rests upon a surgeon in regard to knowledge upon his part as to whether or not the sponges used in the operation are all accounted for.

The following testimony was given by Dr. John N. Chain, called by defendant Wallace:

"During the operative procedure the instrument nurse and her assistant . . . are both diligent in seeing that no sponge, instrument, or other things are missing from what they started in with. So, that at about the time the surgeon is ready to close up, either by intimation or direct words, the surgeon is informed that every thing is accounted for . . . Other times the nurse will say, 'Doctor, the sponge count is correct.' Q. Now, doctor, if there is a sponge missing, what is done with reference to advising the surgeon of that fact? A. He is told that a sponge is missing, and holds up closure until it is accounted for, or he has searched the operative field and has proven that it is not present. . . . They (the operative nurse and her assistant) should know at that time whether any sponges or anything else which has been used are missing which might be enclosed in the field. . . . " The practice is that he (the surgeon) should assure himself with the cooperation of the surgical nurse that all sponges are out.

Dr. B. M. Marshall testified as follows: "There is a burden upon both the physician and the nurses in this matter in

determining whether or not the sponges are all accounted for.''

It is conceded by Dr. Wallace that he did not count the sponges or require a sponge count and he conceded that the employees of the hospital did not make a special count, which seems an admission that he did not affirmatively satisfy himself either by having a count made or making one himself, to determine whether or not all sponges were accounted for.

The rule as stated in 21 Ruling Case Law, 388, is to the effect that ''surgeons cannot relieve themselves from liability for injury to a patient caused by leaving sponges in a wound after an operation, by the adoption of a rule requiring the attendant nurse to count the sponges used and removed, and relying on that rule as conclusive that all sponges have been accounted for.''

█ The surgeon had the power and, therefore, the duty to direct the nurse to count the sponges as part of his work in the opening and closing of plaintiff's abdomen and the putting in and taking out of sponges, and it was his responsibility to see that such work was done. He cannot relieve himself of liability by any custom or rule requiring the nurses to count the sponges used and removed. The refusal of the court, therefore, to give an instruction based upon the principle as outlined by plaintiff, constituted error.

█ Appellant strongly urges that what constitutes proper practice can be established only by expert testimony. With this general rule we have no complaint, but it does not require the testimony of an expert to convince even a court or jury of laymen that the leaving of a gauze sponge fourteen inches square in an abdominal cavity, upon the completion of an operation, and the permitting of the same to remain undiscovered for five weeks, does not constitute good medical practice.

We believe sufficient has been said to justify the ruling of the trial court in granting a new trial as against defendant Wallace.

The order, therefore, granting a new trial as to Sisters of St. Joseph of Orange, a corporation, is reversed, and the order granting a new trial as to defendant C. T. Wallace is affirmed.

Plummer, J., concurred.

440

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 21, 1935, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 19, 1935.

Langdon, J., voted for a hearing.